MONROE, O. J.
[1] 1. Defendant, through counsel, excepted to the ruling of the trial court sustaining an objection, made by the prosecuting officer, to certain questions propounded on behalf of defendant in the examination, on voir dire, of E. Tillman, a prospective juror. The questions are summarized in the brief of counsel as follows:
“If accepted as a juror, are you willing to accept as evidence, and give due weight to the testimony of experts as to the cause, effect, treatment, and cure of insanity, and that, in their opinion, the long-continued use of morphine (drugs) will result, under given conditions, in insanity, maniacal outbursts and irresistible insane impulses.” (Objected to for the reason that it is an improper question to ask a juror on his voir dire, there being no such question pending before him, and that (it is) to ask him to prejudge the testimony before the case is tried.)
We discover from the record that the prospective juror to whom the questions were propounded did not serve on the jury by which defendant was tried, but it does not appear whether he was challenged for cause, or peremptorily, and, if so, by whom, and it is admitted that defendant did not exhaust his peremptory challenges; from which it is argued by the state that defendant “has failed to show wherein he was injured, in that he does not show that he was forced to accept this juror,” or, it may be said, any other juror who was objectionable to him by reason of the exhaustion of his challenges. Counsel for defendant, on the other hand, contends that it was unnecessary that his peremptory challenges should have been exhausted in order to entitle him to relief in the case as presented.
“To so require,” be argues “would force the accused to ask questions of the first twelve men and then challenge, and this would be unreasonable and very nearly, if not quite, contempt of court. The question was not permitted, and it was then that defendant was not peimitted to select an unprejudiced and unbiased jury. If a juror is prejudiced against, and unwilling to accept, the very class of evidence defendant relies upon to establish his defense, it matters very little that the juror has no bias for or against the accused, and has neither formed nor expressed an opinion as to the guilt or innocence of the accused. * * * The mere fact that a juror may show himself to be a competent juror in answer to the set and usual questions propounded to him on his voir dire does not, by any means, conclude the examination. The defendant ought to be allowed to ask such further questions, within reasonable limits, as will disclose any tendencies of mind or i-eason which, in the opinion of the defendant, would make the juror unacceptable.”
We concur in the view expressed by defendant’s counsel to the extent that we do not consider the well-established rule invoked by the state applicable to the condition here presented. That rule is predicated on the idea that, while the purpose of the Constitution and statutes is to obtain an impartial jury in every case, the rejection of a particular juror has no tendency to prevent the accomplishment of that purpose, quoad the defendant in a criminal case, so long as he has not exhausted his peremptory challenges before the jury is completed, since, until then, he has it in his power to challenge any juror whom he may consider partial or incompetent.
In this case, however, the purpose of defendant’s counsel was to ascertain the views, not only of the proposed juror, but of others to be tendered, upon the matter concerning which the excluded questions were propounded, in order that defendant might be able to form an opinion as to whether the proposed jurors would be acceptable, and, according *153 to his view, competent to serve in the case. It is obvious therefore that, if the matter in question was a proper subject of inquiry, the suppression of that inquiry was the denial of a right, and the error, so committed, was never cured or rendered harmless, even though defendant had used none of his peremptory challenges, since he must have been compelled to accept all of the jurors by whom he was tried without knowing the views of either of them upon the question about which he sought information. We are therefore of opinion that he is entitled to a ruling upon the main question brought up; i. e., whether the views of the proposed juror, concerning the credibility of expert testimony, was a proper subject of inquiry.
It must be conceded that, though a juror be impartial as to the particular defendant on trial — having no prejudice, personal, to him, either in his favor or against him — he may entertain views on other subjects which may disqualify him from trying such defendant, as, for instance, he may be a member of an association organized for the prosecution of the offense for which the defendant is to be tried, or may be particularly prejudiced against that offense, or against the business in which defendant is engaged, or the race of which he is a member, or upon so many other matters that may affect his judgment that the courts of last resort have been unable to establish any rule that can properly be applied in all the cases that arise and much is left to the discretion of the trial courts. Counsel for defendant concedes, and the authorities sustain that view, that the examination of a juror on his voir dire should be confined “within reasonable limits” ; but he associates the idea of “reasonable limits” with such an inquiry as will satisfy the defendant, or, to use his language, “as will disclose any tendencies of mind or reason, which, in the opinion of the defendant, would make the juror unacceptable,” whereas, as we understand it, the question of reasonableness vel non is to be determined by the courts, with reference to the recognized rules which govern the practical administration of justice in criminal cases. Considering, then, the immediate question presented, it would appear that if the credibility of the witnesses, upon whom a defendant in a criminal prosecution expects to rely, can be made the subject of investigation and discussion, as one of the incidents in the selection of the jurors by whom he is to be tried, the more notorious the depravity of such defendant and his witnesses, the greater the likelihood of his escaping trial altogether. If he be prosecuted for perjury and his sole witness be a person who has been many times convicted of that offense, it would, probably, be difficult, and perhaps impossible, to find a juror who would give “due weight” to the testimony of either; and, in any case, it would seem to be necessary to. marshal the witnesses on either side and obtain from each juror, in advance of the trial, an opinion as to the weight that he will give to the testimony of each witness, after he shall have heard it, and all that without any notice of an intention to impeach, and with the expectation that the trial judge will make a ruling which will necessarily involve an inferential expression of opinion upon a matter which our law has relegated to the jury, when impaneled and charged with the case, and concerning which it has prohibited the trial judge from intimating that he has any opinion.
In Commonwealth v. Porter, 4 Gray (Mass.) 423, the defendant’s counsel, before the jury had been impaneled, offered to prove that some of the jurors had stated that they would believe a certain Howard, who was thereafter to be called as the main witness for the state, and whom defendant had, unsuccessfully, attempted to impeach, in a prosecution under another indictment. The *155 trial court rejected the evidence, and its ruling was affirmed by the Supreme Judicial Court, where it was said:
“The counsel for the defendant proposed to inquire of the jury if they had formed and expressed any opinion as to the credibility of Howard. Tire court declined to have the question put. The inquiry was novel, and, if competent, would certainly be a great relief to persons in-dieted, who are anxious not to be tried; for just in the degree that the character of the witnesses to he called was well known and respected would the objection prevail. If the witness. happened to be an individual known and revered by all his fellow citizens as a man without reproach, every member of the panel would have formed an opinion as to his credibility.”
In State v. Everitt, 14 Wash. 574, 45 Pac. 150, a prospective juror was asked several questions, the substance of which was whether, in the event that defendant should take the stand as a witness, the fact, that he was charged with cattle stealing, would prejudice the juror against his testimony. The court, after referring to the peculiar position of á defendant in such case, appearing as a witness in his own behalf, and the law concerning his failure so to appear, proceeded as follows:
“Again, as to the other phase of the question, when the defendant enters a witness stand, he enters it under the same rules and on the same footing as any other witness, and he has no right to attempt to ascertain in advance what the jury may think of Ms credibility as a witness. All questions of this character would simply have a tendency to confuse and entrap jurors and render the selection of a legal juror almost impossible.”
Our conclusion is that the examination proposed by defendant would have been unreasonable, would have established a bad precedent, which, if followed, would lead to confusion and obstruction in the administration of criminal justice, and that it was properly denied.
[2] 2. In a motion for new trial, to the overruling of which a bill was reserved, it is alleged (and the allegations are supported by an affidavit that appears in the record, signed by two of the jurors who served in the case) that the foreman of the jury had stated to the other jurors, during-their deliberations, that he would not believe under oath the main witness called, as an expert, by defendant (and who had testified that he had received defendant at his sanitarium a few months after the homicide, that he was then insane, and that the witness had treated him for the morphine habit and believed him to have been insane at the time of the homicide), and had made other statements of fact which were prejudicial to the character of said witness, none of which had been testified to on the trial, and which were untrue and calculated to prejudice the jury against defendant, and did induce one of the members to change from “not guilty,” to “guilty,” in the rendition of the verdict.
It does not appear from the transcript that the affidavit to which we have referred was offered in evidence, or even filed in the clerk’s office, nor is it referred to in the minutes, or the ruling of the court. We must assume therefore that it was not admitted in evidence, or considered by the trial judge; and hence we are unable to consider it. We may say, however, that our examination of the many adjudged cases to which we have been referred by defendant’s learned counsel has failed to satisfy us that they furnish authority for holding the instant case to be an exception to the rule that a juror cannot be heard to impeach his verdict. .
[3] 3. It appears from the remaining bill (which has not been made the basis of any argument) that the jury, at first, brought in the verdict:
“We, the jury, find the defendant guilty as charged, and recommend him to the mercy of the court.”
Whereupon they were, asked by defendant’s counsel if they understood that their verdict condemned the accused to be hanged, and, upon the reply from several of the jurors that such was not the verdict upon which *157 they had agreed, the judge ordered them to retire for further deliberation, but, before doing so, instructed them as to the several verdicts, either of which might be returned, to which order and charge defendant’s counsel objected and asked that a mistrial be entered; and, the objection having been overruled and the jury having retired, they again returned into court, with the verdict (quoting from the minutes):
“We, the jury, find the defendant guilty as charged, without capital punishment.”
Whereupon each member of the jury was polled—
“and asked if that was his verdict, and, when the name of Clint Thompson was reached, he stated that he wished to have added to the verdict that the mercy of the court was asked, but that there was a misunderstanding and the foreman did not ask it, and, upon the clerk reading the verdict and asking if this was his verdict, after some delay, he stated that it was. To all of which proceedings counsel for defendant reserved a bill.”
[4] We find no error in the ruling thus recited. The verdict, as originally returned, not having been received and recorded, was open to alteration by the jury. State v. Jeanisse, 125 La. 363, 51 South. 290. The penalty for murder being fixed by law, and a jury’s recommendation of a person found guilty of that offense to the mercy of the court being futile, it is competent for the.court to direct the jury to retire and return a verdict which may be given effect. State V. Brannon, 133 La. 1030, 63 South. 507.
Judgment affirmed.