(94 South. 204)

No. 25338.

## STATE v. SCARBOROUGH.

(Oct. 30, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Jury ⟬90—Not error or abuse of discretion to permit juror distantly related to deceased to sit.**

Where a juror who was distantly related both by blood and marriage to deceased, but who was not personally acquainted with him, stated that so far as he was able to judge this would not affect his verdict, and that he had no prejudice or feeling against the defendant, though ample time had elapsed for a feeling of resentment to have arisen, the judge did not err or abuse his discretion in holding that the juror was qualified.

**2. Criminal law ⟬1152(2)—Trial judge has discretion in determining competency of jurors which should not be interfered with unless abused.**

Under Act No. 135 of 1898, § 1, the trial judge is vested with discretion to determine the competency of jurors in case of relationship or other alleged cause of disqualification, and this discretion should not be interfered with except in case of abuse.

**3. Criminal law ⟬338(3)—That state did not produce gun until forced to do so held irrelevant, in absence of showing of relevancy.**

It was improper for those representing the state to withhold a gun belonging to deceased, but evidence as to whether or not the state failed to produce the gun until forced to do so was irrelevant on a trial for manslaughter, in the absence of any facts making it relevant.

**4. Criminal law ⟬1144(12)—Ruling presumed correct in absence of showing of facts making evidence relevant.**

Facts, making evidence that the state did not produce a gun belonging to deceased until forced to do so relevant on a trial for murder, should be shown, or otherwise the Supreme Court must presume that the ruling of the trial judge excluding the evidence was correct.

**5. Witnesses ⟬321—Defendant could not impeach witness voluntarily called.**

Where defendant voluntarily called the sheriff as his witness, he could not examine him concerning the failure of those representing the state to produce a gun belonging to deceased for purpose of impeaching him.

**6. Criminal law ⟬714—State entitled to comment on evidence concerning former trial.**

Where defendant elicited from one or two witnesses the fact that he had been convicted on a former trial and that the verdict was set aside because the jury was permitted to separate, it was proper for the state's counsel to comment on such evidence and to state to the jury that the verdict was set aside on account of technicalities, especially where the judge afterwards told the jury that the former verdict was entitled to no weight.

**7. Criminal law ⟬1053, 1092(13)—Remark of judge not reviewable without exception and signing of bill by judge.**

Where the stenographer's notes of bills taken shows no exception taken at the time to a remark of the judge, and the judge refused to sign bills of exception because no exception was taken, the bills cannot be considered.

**8. Criminal law ⟬656(1), 1166½(12)—Judge's remark on objection to argument not comment on evidence or prejudicial.**

Where defendant objected to a remark of counsel for the state relative to a verdict on a former trial, the judge's remark that defendant had gone into the matter himself *held* not prejudicial, or a comment on the evidence.

**9. Criminal law ⟬561(2)—Homicide ⟬151(3)—Burden on state to prove killing was not in self-defense; feloniousness of homicide must be proved beyond reasonable doubt.**

The burden is not on defendant to prove his plea of self-defense, but on the state to prove that the homicide was not in self-defense, as a homicide committed in self-defense is justifiable and not felonious, and the state must prove its feloniousness beyond a reasonable doubt.

**10. Homicide ⟬244(3)—Reasonable doubt raised by evidence of self-defense entitles defendant to acquittal.**

Evidence of self-defense when offered is for the purpose of rebutting the evidence produced by the state to show that the homicide was felonious, and when considered in connection therewith, if it leaves a reasonable doubt as to whether the homicide was felonious, such doubt entitles defendant to an acquittal.

**11. Criminal law ⊛⟹761(6)—Homicide ⊛⟹300 (3)—Instruction on self-defense properly refused as inaccurate and trenching on the province of the jury.**

Instruction that if there should exist a reasonable doubt whether defendant was as a reasonable man acting under a reasonable belief that it was necessary to act as he did to defend his life, the jury should acquit, was properly refused as it was not clear, trenched on the province of the jury by assuming that what he did was proper, and restricting the jury to the question of defendant's reasonable belief, and was incorrect, since he might have acted under such reasonable belief, and yet not have been entitled to an acquittal.

**12. Criminal law ⊛⟹844(1)—Exception not giving ground of objection or specifying particular portion of charge too general.**

An exception to a charge on self-defense is too general and not entitled to consideration where it mentions no ground of objection and specifies no particular portion deemed objectionable.

**13. Criminal law ⊛⟹1134(4)—Denial of motion for new trial based on evidence not reviewable.**

A motion for a new trial, on the ground that the verdict is contrary to the law and the evidence, is not reviewable in the Supreme Court.

Appeal from Fourth Judicial District Court, Parish of Union; J. B. Crow, Judge.

Harry Scarborough was convicted of manslaughter, and he appeals. Affirmed.

J. W. Elder, of Farmerville, for appellant.

A. V. Coco, Atty. Gen., E. A. O'Sullivan, Special Asst. Atty. Gen., S. L. Digby, Dist. Atty., of Farmerville (T. S. Walmsley, of New Orleans, and H. G. Fields, of Farmerville, of counsel), for the State.

By the WHOLE COURT.

OVERTON, J. The defendant was charged with the murder of Ollie Westbrook. He was tried twice. On the first trial he was found guilty of manslaughter, but filed a motion for a new trial, which the judge below maintained. On the second trial he was tried for manslaughter, having been acquitted of murder on the first, and was found guilty. On the second conviction, after a motion for a new trial had been overruled, he was sentenced to pay a fine of $1 and to suffer imprisonment at hard labor for not less than 9 nor more than 12 years. He has appealed from this sentence, and relies on several bills of exception to obtain a reversal.

[1, 2] The first bill of exception urged is to the competency of a juror named Kennedy. During the course of the juror's examination, on his voir dire, it developed that he was distantly related to the deceased, the exact degree not appearing, and that his wife was a second cousin of the deceased. The juror was closely examined, both by the defendant and the judge, to ascertain whether the relationship would influence his verdict. In the course of the examination he stated that it would seem natural for one to entertain a different feeling towards the man who had killed a person related to him and to his wife from the feeling one would entertain if that man had killed a person not related. He further stated that he could not say whether there would be a feeling of resentment against the man who had killed one related to him and his wife, but did not think there would. He also said that, while it was possible such a relationship might unconsciously affect his verdict, he did not think it would. Finally, the court asked him the following questions, and he gave the following answers:

"Q. Mr. Kennedy, you are the only man that knows whether this might affect your verdict in any way. You know whether you have any feeling of resentment that would weigh with you in the consideration of the case, and I want to know if you have any feeling of prejudice or resentment in the matter because of relationship, or otherwise, that you feel might weigh with you in arriving at a verdict.

"A. I don't feel that it would.

"Q. Were you acquainted with Ollie Westbrook?

"A. No, sir. I knew him when I saw him but was not personally acquainted with him.

"Q. Is there now any personal feeling in your mind, or prejudice, towards this defendant? "A. Not a bit."

It is not contended that the relationship of the juror, whether by blood or marriage, to the deceased, was so near as to render him incompetent, as a matter of law, nor are there grounds for such a contention, had it been made. It is contended, however, that at no time would he say that the relationship would not affect his verdict, and therefore his answers do not disclose that he was impartial. It is true that at no time did he so say, but we think that his answers, fairly construed, show that while it was possible that it might, yet in so far as he was able to judge it would not. Therefore, as he stated positively as a juror, that he had no prejudice or feeling, at all, against the defendant, and as he was not personally acquainted with the deceased, though he knew him when he met him, apparently not thinking enough of the relationship even to form his acquaintance; and, as it appears that the juror had heard of the killing before, and as ample time had elapsed for a feeling of resentment to have arisen, and as none had arisen up to the time of the trial, we are unable to say that the judge below erred in holding that no danger existed that the juror would be affected by the remote relationship existing, in reaching a verdict. The law vests the trial judge with discretion to determine the competency of jurors, when from physical infirmity, or from relationship, or ignorance of the English language, or from other cause, they may be incompetent to sit in the case. Section 1, Act 135, 1898, p. 216. The discretion, so vested, should not be interfered with, except in case of abuse, and we find none here.

Considering the bills of exception in their logical order rather than in the order in which they are numbered and appear in the transcript, the next bill submitted for our consideration relates to the following question propounded by the accused to A. L. Stancil, an uncle of the deceased, and a witness for the accused, which question is as follows:

"At the date of the preliminary trial, which was held in January of last year, two weeks after the killing, this gun was not introduced in court, was it?"

The state objected to this question on the ground that the evidence sought to be elicited was irrelevant and immaterial, and for the additional reason that the transcript of the preliminary trial was the best evidence. The court maintained the objection, and the defendant then propounded the same question, except more in detail, as follows:

"I will ask you if it is not a fact that this gun was never introduced into this court or presented to the defendant or his attorney until they filed a rule in court shortly before the former trial and several weeks after the preliminary trial in which they asked for the production of this gun?"

This question was also objected to on the ground that the evidence sought was irrelevant, immaterial, and not the best evidence, and upon the further ground that the question was leading. The objection was maintained, and then the defendant offered the minutes of court showing the filing of a motion which contained a prayer for the production of the gun. The state objected to this offering on the ground that it was irrelevant, immaterial, and not the best evidence, and the court maintained the objection.

The record discloses that the defendant called the witness to the stand as his witness, and elicited from him that he was sheriff of the parish at the time of the homicide and of the trial, and was the uncle of the deceased, and also that as sheriff he visited the scene of the homicide on the night of the killing, where he obtained the gun. Then follow the questions and objections above

given, and the rulings of the court maintaining the latter. It does not appear that the witness gave any other evidence in the case than that stated.

We learn from defendant's brief that the purpose of the evidence was to show that the state did not produce the gun until it was forced to do so, and infer that the gun was one belonging to the deceased, and in the possession of the witness, as sheriff.

[3-5] As a matter of course, if those representing the state were withholding the gun, which we do not assume to have been the case, such action was improper. However, as to whether or not the state did not produce the gun until forced to do so was irrelevant. Such action had no legitimate tendency to prove the guilt or innocence of the accused, nor to show that the witnesses for the prosecution had not testified truthfully. A case might so develop that such evidence would be relevant. When one does so develop, the facts that make it relevant should be shown, otherwise the court must presume that the ruling of the trial judge is correct. In so far as the sheriff is concerned, who was the witness to whom the questions were propounded, it is not contended that their purpose was to impeach his evidence. Even had there been, the defendant voluntarily called him to the stand as his witness, and was therefore precluded from impeaching him. We, therefore, conclude that the evidence was properly excluded.

[6] During the course of his argument, H. G. Fields, who was assisting in the prosecution, stated to the jury that the verdict rendered against defendant, on a former trial of this case, was set aside on account of technicalities. The defendant objected to this remark, and the court, in effect, overruled the objection by saying that the defendant had gone into the matter himself.

The judge states, in signing the bill, that counsel for the defendant, in the absence of objections from the state, elicited from one of two witnesses that the accused had been convicted on a former trial of this case, and that the verdict was set aside, because the sheriff had permitted the jury to separate. It is sufficient to say, therefore, in passing on this bill, that as such was the case, counsel for the state had a right to 'comment on the evidence; and, in doing so, to make the above remark. It may be added, though unnecessary to a determination of the question, that the judge afterwards, at the conclusion of his general charge, and at the request of counsel for the defendant, instructed the jury that the former verdict was entitled to no weight.

[7, 8] It will be recalled that, when defendant objected to the argument of counsel for the prosecution, the judge disposed of the objection by saying that defendant had entered into the matter himself. Defendant incorporated in the foregoing bill, one showing that he had excepted to the judge's remark, when made, but the judge has refused to sign the bill, for the reason that no exception was taken at the time, and he refers us to the stenographic notes of bills taken, in support of his statement. It may be said that they do not show such an exception. Since it does not appear that the remark was excepted to, when made, and since the judge states that he does not sign the bill, because the remark was not excepted to, we cannot consider it. State v. Harris, 39 La. Ann. 228, 1 South. 446. We may add, however, that in our view the remark is neither a comment on the evidence nor is there anything prejudicial in it.

At the conclusion of the general charge to the jury, the defendant requested the judge to give the following special charge:

"If, after hearing all the evidence and there should exist in the minds of the jury a reasonable doubt whether the defendant was as a reasonable man and acting under a reasonable belief that it was necessary to act as he did to

defend his life, then, if such doubt exists, it is the duty of the jury to acquit the defendant."

[9, 10] The judge refused to give this charge, for the reason that it is not clear and is not an accurate statement of the law. It is well established that the burden is not on the defendant to prove the plea of self-defense, but is on the state to prove that it was not in self-defense. This is so, because the burden is on the state to prove that the homicide was felonious, which fact it must establish beyond a reasonable doubt. If the homicide was in self-defense, it was not felonious, but justifiable; and since the state must prove its feloniousness beyond a reasonable doubt, any such doubt as to whether it has done so, entitles the accused to an acquittal. Evidence of self-defense, when offered, is for the purpose of rebutting the evidence produced by the state to show that the homicide was felonious, and when considered in connection with it, if it should leave a reasonable doubt as to whether the homicide was felonious, that doubt entitles the accused to an acquittal. State v. Ardoin, 128 La. 14, 54 South. 407, Ann. Cas. 1912C, 45; State v. Vernado, 128 La. 883, 55 South. 562; State v. Herring, 131 La. 972, 60 South. 634.

[11] However, the special charge tendered on this phase of the law and quoted above is not clear and accurate. It is incorrect, and trenches on the province of the jury, when it purports to instruct them that, if they should entertain "a reasonable doubt whether the defendant was as a reasonable man and acting under a reasonable belief that it was necessary to act as he did to defend his life," they should give him the benefit of such doubt, and acquit him. The expression, "to act as he did" assumes that what defendant did was proper, and restricts the question to be determined by the jury, to whether there is a reasonable doubt that defendant was acting under a reason-able belief that it was necessary for him to act as he did to defend his life. Without examining the charge further, it is sufficient to point out that defendant might have acted under a reasonable belief that it was necessary for him to act as he acted, to defend his life, and yet not be entitled to an acquittal. As, for instance, he may have provoked the difficulty, and after having done so, have entertained a reasonable belief that, in order to save his life, it was necessary for him to kill his adversary, without retreating or without notifying him that he abandoned the difficulty, and may have thus killed him, in which event he would not be entitled to a verdict of not guilty. Other illustrations might be given, but the above is sufficient.

[12] Defendant also excepted to the general charge on self-defense. The exception mentions no ground of objection, and specifies no particular portion, which the defendant may have deemed objectionable. It is therefore too general, and not entitled to consideration. A similar exception was before this court in the case of the State v. Melton, 37 La. Ann. 77. The only difference between the exception there and the one here is that in the Melton Case the exception was taken to the entire charge of the judge, and in the present one, to the entire charge on self-defense. The principle involved, however, is the same. In the cited case it was said:

"So far as the bill of exceptions is concerned, this court, 30 years ago, declined to countenance bills of this character, saying: 'It is calculated to embarrass, if not defeat, the administration of justice. The attention of the district judge should be called to those parts of this charge which are deemed objectionable, that he may have an opportunity to explain them if misunderstood, or modify them if erroneous, or, at any rate, assign his reasons for making the charge in the form objected to.' State v. Chopin, 10 La. Ann. 458; State v. Riculfi, 35 La. Ann. 774."

We, therefore, conclude that the bill cannot be considered.

Incorporated in the above bill is one to the illustrations of the court given in the general charge, in explaining it. However, the judge has refused to sign it on the ground that no such bill was taken, and has again referred to the stenographic notes of bills reserved, which do not show the reservation of the bill in question. Learned counsel for the defense do not mention it in their brief, and we, therefore, presume they have abandoned it. If they have not, it is governed by the same principle applied herein to the other bill not signed, and therefore cannot be considered.

[13] The last bill is one reserved to the overruling of a motion for a new trial, based on the ground that the verdict of the jury is contrary to the law and the evidence. It is well established that such a motion is not reviewable in this court, nor do counsel mention it in their brief.

For the reasons assigned, it is ordered, adjudged, and decreed that the verdict of the jury and the judgment and sentence appealed from be and the same are, hereby affirmed,