**51 So.2d 96**

**STATE v. WIDEMAN et al.**

**No. 40146.**

Feb. 12, 1951.

M. K. Wideman being found guilty of simple battery and sentenced to serve two years on the parish farm, while R. E. Jenkins was found guilty as charged and sentenced to serve 10 years in the state penitentiary. Both have appealed their convictions and sentences, urging as grounds for reversal, however, only eight of the twelve bills of exceptions reserved to the rulings of the judge made during the trial of the case.

Four of the bills are levelled at rulings during the examination of the jurors on their voir dire, the first being reserved when the defense was not permitted to ask James E. Carr if he would believe the testimony of his brother (a deputy sheriff who had investigated the crime and was to testify on behalf of the state) in preference to that of the defendants or strangers; the second when the judge refused to permit the defendants to challenge Carr for cause on the ground of bias and prejudice, in view of his answer to one of the propounded questions and his relationship to one of the witnesses; the third when the district attorney, during the examination of W. R. Parnell, was permitted to remark that the defendants were liquor runners and bootleggers; and the fourth when the trial judge refused to permit the defendants to challenge W. W. Meadows for cause although he stated he would be biased and prejudiced if it was shown during the trial that the defendants were bootleggers.

Wilson, Abramson & Maroun and Jack H. Kaplan, all of Shreveport, for defendant-appellants.

Bolivar E. Kemp, Jr., Atty. Gen., M. E. Culligan, Asst. Atty. Gen., E. L. Blewer, Dist. Atty., Shreveport, for appellee.

FOURNET, Chief Justice.

The defendants were jointly charged and tried for the crime of aggravated battery, The question disallowed by the trial judge, forming the basis for Bill of

Exceptions No. 1 is as follows: "If your brother, Mr. Carr, Deputy Sheriff of Caddo Parish, Louisiana, one of the witnesses for the State in this case, testified to one thing, and defendants' witnesses or defendants testified to a different set of facts, would you believe testimony of your brother rather than strangers or defendants and their witnesses"? In his per curiam to this bill the judge states he thought the question an improper one. We readily agree with him. "The purpose of the examination of jurors is to ascertain the qualifications of the juror in the trial of the case in which he has been tendered, and *the examination shall be limited to that purpose.*" Article 357 of the Code of Criminal Procedure. It is not competent, therefore, to examine a juror as to his attitude toward a particular witness who is expected to testify in the case. See, State v. McIntosh, 141 La. 150, 74 So. 886; State v. Dyer, 154 La. 379, 97 So. 563; and State v. Henry, 197 La. 999, 3 So.2d 104. (Italics ours.)

During the course of his examination, the prospective juror Carr answered "I think I can" to the question "In view of the fact that your brother is a witness for the State in this case, do you think that you could give the defendants an impartial trial and not be biased to any extent"? Bill of Exceptions No. 2 sets out that the challenge of this juror for cause was based on two grounds: (1) His prejudice was established by his "I think I can" answer to this ques-

tion; and (2) he was a brother of a state's witness who, as a deputy sheriff, investigated the crime.

■ Under the express provisions of Article 351 of the Code of Criminal Procedure a juror may be challenged for cause if he is found to be partial, the cause of his bias being immaterial, and he may be challenged for cause if the relations of "blood, marriage, employment, friendship or enmity" existing between him and the *accused,* or the *person injured,* be such as to reasonably create the belief they would influence him. It is obvious that there were no relations whatever between this juror and the accused or the person injured, such relationship existing between the juror and one of the state's witnesses only.

■■ The right to permit challenge of a juror for cause on any ground other than those set out in Article 351 is within the sound discretion of the trial judge, which will not be disturbed unless it is shown he abused that discretion, and none has been shown here. State v. Scarborough, 152 La. 669, 94 So. 204; State v. Dunn, 161 La. 532, 109 So. 56.

■ The note of evidence showing the questioning of the juror Carr is not before us, not having been made a part of this bill. Consequently, we must accept as true the statement of the trial judge in his per curiam to this bill that Carr was not only known to him personally and was a man

of high reputation in the community, but that he examined this juror at length and was satisfied he was unbiased and able to render a fair and impartial trial. This juror never served, having been peremptorily challenged.

■ The trial judge tells us in his per curiam to Bill of Exceptions No. 3 that he overruled the objection of defendants to the statement of the district attorney (during the questioning of prospective juror W. R. Parnell) that the defendants were liquor runners and bootleggers because defense counsel in his examination of all jurors on their voir dire sought to test their attitude toward the defendants in the event it developed during the course of the trial they were such, and also because the defendants themselves, while on the stand under cross-examination, admitted they were bootleggers. We agree with the judge's conclusion that under these circumstances the defendants could not have been prejudiced by such a statement.

■ Bill of Exceptions No. 4 is also without merit. While the record shows juror W. W. Meadows answered "Yes" to the question propounded by defense counsel: "If it should be shown during the trial of this cause that the defendants, M. K. Wideman and R. C. Jenkins are bootleggers, would you be biased and prejudiced against the defendants?", the trial judge in his per curiam states that upon further examination this juror told the court he answered

the question in this manner because he was under the impression, when it was asked, the defendants were being tried for the crime of bootlegging, and that when it was fully explained to him they were not, he satisfied the judge he was fair and impartial and he was, therefore, qualified to serve as a juror.

Defendants objected to the district attorney's allusion in his opening statement to the jury (which forms the basis of Bill of Exceptions No. 5), and in his closing argument (which forms the basis of Bill of Exceptions No. 12) to the fact that the defendants had, some time prior to the commission of the crime with which they were charged and at a place miles away from the scene, been engaged in an exhibition of shooting at a Neon sign. The objection was based on the ground that this incident could have no bearing on the charges brought against the defendants and were aimed solely at prejudicing and unduly influencing the jury.

According to the per curiam of the trial judge to Bill of Exceptions No. 5 (which is also made the per curiam to Bill of Exceptions No. 12), the aggravated battery with which the defendants were charged was committed upon C. W. McCoy shortly after midnight by two men in a green pick-up truck who brandished a nickel-plated pistol. The defense of Jenkins was based on an alibi, he claiming to have been at home from a time early in the evening until

he was arrested around four the following morning. The trial judge points out that these remarks of the district attorney, and the evidence introduced in support of them, were directed at destroying this alibi and also to link these two defendants to the crime with which they were charged inasmuch as it showed the two men were not only together at the sign shooting incident (which was shortly before the battery was committed) but also that the sign was shot up by two men in a green pick-up truck who had a nickel-plated pistol, all of which was particularly pertinent since the defendant Wideman admitted he was one of the men involved in this shooting incident, that the truck in which he was riding at the time the sign was shot was the same truck used when the battery was committed; and the evidence also established this truck was the property of Jenkins, that he gave his wife a blood-stained nickel-plated pistol shortly after the crime was committed, and it was later found by investigating officers at the Jenkins home.

 We think the trial judge correctly permitted these remarks of the district attorney to stand. While as a general rule evidence of one offense cannot be offered in proof of another offense, this rule is subject to several well known exceptions, among them the one that permits the introduction of such evidence when it "tends to identify the accused as the perpetrator of the crime charged." State v. Hicks, 180

La. 281, 156 So. 353. See, also, State v. Johnson, 111 La. 935, 36 So. 30; State v. Ferrand, 210 La. 394, 27 So.2d 174, 167 A. L.R. 559; and State v. Mattio, 212 La. 284, 31 So.2d 801.

 We find the trial judge also ruled correctly with respect to the next bill being urged, i. e., Bill of Exceptions No. 7. The prosecuting witness McCoy had testified he identified the defendants (although he had not seen their faces when they "jumped" him) in a line-up in Caddo Parish solely by their size. The trial judge then refused, upon objection of the state, to permit defense counsel to ask him the following question on cross-examination: "If two persons of the same size as Wideman and Jenkins had been in the line-up at the Caddo Parish jail and if Wideman and Jenkins had not been in the line-up *isn't it true that you would have selected the two persons of the same size as Wideman and Jenkins as the men who attacked you?*" (Italics ours.)

The trial judge advises that this question as posed in the bill reserved is somewhat different than that actually asked during the trial, since the underscored portion thereof was as follows: "* * * the chances are that you would have selected the two persons of the same size as Wideman and Jenkins as the men who attacked you." He also observes that while this was a proper matter for defense counsel to argue to the jury, it was not a proper question to propound to a witness since, in an-

swering it, he could venture nothing more than a hazardous guess; further, that the defendants could not have been prejudiced by this ruling because there was ample testimony to show Jenkins and Wideman were the men who actually committed the crime. To this we might add that the defendants are not here claiming, nor do they in fact show, that the trial judge limited their cross-examination of the prosecuting witness on this phase of the case. Under these circumstances we cannot see in what way their cause could have been prejudiced by the disallowance of this lone question, which was clearly an improper one.

Bill of Exceptions No. 11, the only other reserved bill argued, is levelled at statements made by the district attorney to the jury, wherein he characterized the defendants as bad characters and as bootleggers. This complaint is groundless since (as pointed out previously in discussing Bill of Exceptions No. 3, and also as pointed out again by the trial judge in his per curiam to this bill) the defendants themselves injected this element into the trial during the questioning of the jurors on their voir dire, and, taking the witness stand in their own behalf, also admitted they had previously been convicted of what is commonly called "bootlegging" in the dry state of Oklahoma and were there sentenced to pay a $1,000 fine and to serve a year in the federal correctional institution at Texarkana.

For the reasons assigned, the convictions and sentences are affirmed.