174 So.2d 509 (1965)
247 La. 729
STATE of Louisiana
v.
Hildree OLIVER.
No. 47483.
Supreme Court of Louisiana.
March 29, 1965.
Rehearing Denied May 3, 1965.
*510 Bernard E. Burk, New Orleans, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.
McCALEB, Justice.
Appellant and Juanita Davis were jointly charged with unlawful possession of heroin and five dilaudid tablets. Both pleaded not guilty but Juanita Davis subsequently changed her plea to guilty as charged and was sentenced to a term of eight years at hard labor. Appellant was then tried, convicted and sentenced to serve fifteen years at hard labor in the State Penitentiary. He has appealed relying upon twelve of the thirteen bills[1] of exceptions taken during the proceedings for a reversal of his conviction.
Bills Nos. 1, 7 and 9 are interrelated and pertain to the alleged unlawful issuance of a warrant for search of appellant's person and personal effects and his subsequent arrest.
Bill No. 1 was taken to the overruling of a motion to quash the warrant and to suppress the evidence obtained from the search on the ground that it was issued without probable cause in violation of Section 7, Article I of the Louisiana Constitution, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. Bill No. 7 was reserved *511 when the court overruled an objection (based on the alleged illegal search and seizure) to the evidence of a chemist, who testified for the State, that the tablets found in the personal effects of appellant and a white substance taken from the person of Juanita Davis by the police officers on the afternoon of December 5, 1963 were dilaudid and heroin. And Bill No. 9 was reserved when the State, over a similar objection, was permitted to offer in evidence a narcotic kit, a cellophane wrapper with five dilaudid tablets, pieces of tin foil containing heroin, an eye dropper and rubber bulb, several hypodermic needles and other paraphernalia.
The record shows that, on December 5, 1963, Officer Warner of the New Orleans Police Department Narcotic Squad received a telephone call from an informer in Chicago, Illinois, who had previously supplied the New Orleans Police with information leading to convictions in several prior cases, advising him that Juanita Davis, a colored woman approximately 26 years old, about five feet three inches tall, of dark complexion, and wearing a red sweater and green pants, and a colored man known as "Sug" (appellant), about 24 years old, five feet seven inches tall, wearing a black coat and sun glasses, left Chicago, at approximately 8 o'clock in the evening of December 4, 1963, on a train bound for New Orleans. The informer stated to Officer Warner that he was positive the couple had about six spoons of heroin in their possession which they were bringing to New Orleans and had seen Juanita Davis hide it on her person in Chicago.
The officers of the Police Department checked the train schedules and presented this information to Judge Bernard J. Bagert of the Criminal District Court, who then issued warrants for the search of these two persons and their personal effects.
The affidavits presented to the judge are identical and read:
"PERSONALLY CAME AND APPEARED BEFORE ME, the undersigned Judge of the Criminal District Court, Parish of Orleans, State of Louisiana, Patn. William Warner of the New Orleans Department of Police, who, upon being by me duly sworn, depose(s) and say(s):
"THAT A SEARCH WARRANT SHOULD ISSUE FOR THE SEARCH OF `Sug' a Colored male about 24 yrs. 5'7" tall, wearing a blk coat and sun glasses (person and personal effects) FOR THE PURPOSE OF SEIZING THE FOLLOWING DESCRIBED PROPERTY.
"Opium derivitives (sic) Heroin
"FOR THE FOLLOWING REASONS:
"Officer William Warner received a telephone call from a reliable informer, who has given information in the past which has resulted in making narcotic arrests. This reliable informer stated that he was talking from Chicago, Ill. He stated that Juanita Davis CF 26 yrs (approx.) about five foot three inches tall dark complextion (sic) wearing a red sweater and green pants and a colored male which the informer knows as `Sug' described as about 24 yrs of age a colored male 5'7" wearing a black coat and sun glasses left Chicago, Ill. at around 8:00 pm on 12-4-63 on a train headed for New Orleans, Louisiana which should arrive in the afternoon on 12-5-63.
"The informer stated that they had about six spoons of Heroin in their possession and that they were bringing this to New Orleans, La, the informer stated that the last time that he had seen the Heroin was in Chicago, Ill when she had placed it on her person in the area of vagina (Juanita Davis). The informer further stated that he is positive that they have the Heroin with them on the train en route to New Orleans, La.

*512 "This telephone call was received by Patn. Warner at 10:30 AM on Thursday December 5, 1963 in the Narcotic Division Office.
"A check of the train schedule was made by Officer B. Finkelstein and E. J. Barrere at 11:30 Am (sic) on 12-5-63, and it was learned that the train left Chicago, Ill at about 7:30 PM on 12-4-63 and will arrive at about 4:45 PM on 12-5-63 at the Union Passenger Terminal in New Orleans, La."
According to the testimony of Bernard Finklestein, employed by the New Orleans Police Department, he and Narcotics Agent Campbell, U. S. Treasury Department, boarded the train at Hammond and sat directly behind appellant and Juanita Davis. When the train pulled into the Union Passenger Terminal, the officers noting that these two persons fitted the description given in the search warrants, went to them and asked their names. When the colored male answered "Sug" and the colored female answered Juanita Davis, the officers served them with the search warrants and informed them they were under arrest.
The returns on the warrants show that Juanita Davis reached in her brassiere and pulled out a package containing a white powder and that a piece of cellophane containing five small white tablets was taken from the luggage carried by appellant. The white powder was subsequently found to be heroin and the tablets were dilaudid, a derivative of morphine.
Defense counsel contends that the questioned affidavit contains no statement of the informer tending to show that he had personal knowledge that appellant possessed heroin, or that appellant knew that Juanita Davis had heroin in her possession. Counsel suggests that the content of the affidavit is simply the unfounded conclusion of the informer that appellant and Juanita Davis were partners in crime and, hence, the warrant issued without probable cause under Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.
Ever since the decisions in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (applying the guarantees of the Fourth Amendment to the United States Constitution to trials in the State Courts) and Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (holding that, while the States may adopt workable rules governing arrests, searches and seizures, they may not derogate from the federal constitutional standards as applied by the federal courts) this Court has been acutely aware of the necessity of strict compliance with the pronouncements of the Federal Supreme Court relative to the tests to be employed in determining probable cause for the issuance of search and arrest warrants and those applicable in determining whether an arrest and search without a warrant is reasonable.
The primary question here is whether the search warrant issued by the judge of the criminal district court was founded on probable cause. We think it was. In Aguilar v. State of Texas, the Court stated:
"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 [78 A.L.R.2d 233], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887], was `credible' or his information `reliable.'"
In the affidavit presented to the judge, it is stated that the informer (declared to be *513 reliable) had seen Juanita Davis hide the heroin on her person; that she and appellant (both of whom were adequately described) were bringing the contraband from Chicago to New Orleans by train on a definite day. This was a statement of facts from which deponent, as a reasonably prudent man, was justified in concluding that the parties, acting in concert, were violating the law and it provided a substantial basis for the finding of probable cause by the judge for the issuance of the warrant.
Bills Nos. 2, 3 and 4 relate to the trial judge's refusal to allow defense counsel to propound certain questions to prospective jurors on their voir dire examination. One of these questions, which forms the basis of Bill No. 2, was whether the fact that a prospective defense witness had been convicted of violating the narcotic law would prevent the jurors from believing her under oath. Bill No. 3 was reserved when the trial judge told a prospective juror that he was not required to answer defense counsel's question whether the mere fact that appellant was forced to stand trial would cause the juror to feel that he was guilty. And Bill No. 4 was taken when the court refused to permit defense counsel to explain to some of the prospective jurors various reasons why appellant might not choose to testify during the trial and to ask these prospective jurors whether they would draw an adverse conclusion from his failure to do so.
We find no substance in the bills. Article 357 of the Code of Criminal Procedure (R.S. 15:357) states that the purpose of a voir dire examination of a juror is to ascertain his qualifications to serve in the trial of the case "and the examination shall be limited to that purpose." Although considerable latitude must be accorded to defense counsel in the voir dire examination so that he may elicit information necessary for him to intelligently exercise the right of peremptory challenge, as well as challenge for cause (State v. Hills, 241 La. 345, 129 So.2d 12, on rehearing), the judge has the right, indeed, the duty under R.S. 15:357, to restrict the examination to matters pertaining to the qualifications of the jurors to serve in the case and, whenever the examination strays from this purpose or becomes overly lengthy or repetitive, his action in limiting the examination of prospective jurors will not be disturbed on appeal. State v. Odom, 247 La. 62, 169 So.2d 909 and authorities there cited.
All the questions propounded by counsel which form the predicate for these bills were improper. Counsel was without right to commit a prospective juror in advance as to his evaluation of the credibility of a defense witness. The query had no relevancy to the juror's qualification to serve in the trial of the case nor was it calculated to determine whether the juror was biased against appellant. State v. Wideman, 218 La. 860, 51 So.2d 96; State v. Morris, 222 La. 480, 62 So.2d 649; State v. Swails, 226 La. 441, 76 So.2d 523; State v. Williams, 230 La. 1059, 89 So.2d 898 (on rehearing). Also, it was irrelevant for counsel to inquire whether a juror would feel that appellant was guilty because he was the accused or because he might not choose to testify in the case. Each prospective juror interrogated was instructed by the judge, at the time these questions were propounded, concerning the presumption of innocence, the burden of the State to prove guilt beyond a reasonable doubt, and that they were not to consider the accused's failure to take the stand as an indication of guilt. While the jurors are the judges of the law and the facts of a criminal case in Louisiana, they are duty bound to accept the law as instructed by the court and it is always to be presumed the jurors will comply with this duty. Indeed, they take an oath so to do. And, albeit it is proper on the voir dire examination of a juror for counsel to inquire whether he is willing to accept the law as instructed by the court (see State v. Green, 244 La. 80, 150 So.2d 571), the judge exercises a sound discretion in restricting the *514 breadth of the examination to this inquiry, so that counsel may not unduly explore every detail of the mental attitude of the juror in order to commit him in advance as to his reactions to evidence or the lack of it or as to his application of the law to the facts under the instructions given by the judge. See Marr's Criminal Jurisprudence, 2nd Ed., Vol. 1, Secs. 456, 457 and cases cited in support of the text.
During his opening statment the Assistant District Attorney told the jury that, at the time of the arrest, appellant had "track marks" on his left arm from use of narcotics. Defense counsel objected to the statement on the ground that this was an attack on appellant's character which was not at issue in the case. When his motion for a mistrial was denied, counsel reserved Bill No. 5 and immediately thereafter took Bill No. 6 when the judge refused to instruct the jury to disregard the statement of the District Attorney relative to the track marks on appellant's arm from the use of narcotics.
The bills are insubstantial. The statement of the prosecuting attorney was in conformity with R.S. 15:333 inasmuch as the state intended to and did produce evidence that the track marks were present on appellant's arm at the time of his arrest. The evidence elicited was not an attack on appellant's character; it was proof of a fact clearly admissible to establish guilty knowledge which is an essential ingredient of the crime of possession of narcotic drugs. State v. Nicolosi, 228 La. 65, 81 So.2d 771; State v. Johnson, 228 La. 317, 82 So.2d 24 (on rehearing); see also State v. Harris, 232 La. 911, 95 So.2d 496 and State v. Maney, 242 La. 223, 135 So.2d 473.
While two of the arresting officers were on the witness stand and had testified that they apprehended appellant and Juanita Davis on the description given them by an informer they were also permitted to state, over defense counsel's objection, the details of this description. The objection was grounded on the contention that the description furnished by the informer to the officers was inadmissible hearsay. When overruled, counsel reserved Bill No. 8.
We find no merit in the bill. In the first place, we entertain doubt that the description, which had been given the officers, stating the approximate age, type of clothes and appearance of appellant and Juanita Davis was hearsay evidence. Rather, it was offered in this case, not to establish the truth of the description of the suspects supplied by the informer, but only as to the fact that the officers had been given such a description. As stated in the recent case of State v. Green, 244 La. 80, 150 So.2d 571, the officers were not testifying as to anything told them anent the criminal acts of the parties involved (cf. State v. Kimble, 214 La. 58, 36 So.2d 637); they were merely relating the background of their investigation and their answers "* * * did not tend to connect the accused with any criminal activity in the narcotics traffic or in any other field."
Moreover, if it be conceded that the testimony was hearsay in the strict sense of the term, its reception in evidence was not, in our judgment, prejudicial to the substantial rights of appellant and, hence, does not warrant a reversal of his conviction. See R.S. 15:557.
Bill No. 11 was taken when the judge sustained the objection of the prosecution to appellant's offer in evidence of a certificate from the Records Division of the New Orleans Police Department stating that it had no record in its files of a felony conviction of appellant.
The objection was properly sustained. The law is well settled in this State that proof of character, whether good or bad, depends upon the general reputation that a man has among his neighbors (see R.S. 15:479); good character cannot be shown by documentary or testimonial *515 evidence that an accused has never been in trouble or arrested but only by proof of his general reputation in the community in which he lives. See State v. Reeves, 150 La. 950, 91 So. 403 and State v. Terrell, 175 La. 758, 144 So. 488.
The argument of defense counsel that the evidence was admissible because the assistant district attorney in his opening statement placed appellant's character at issue by referring to "track marks" observed on his arm at the time of his arrest is not tenable. It rests on an unsound predicate and, were it otherwise, the evidence tendered is inadmissible.
Bill No. 12 was taken when the judge refused to give appellant's special charge No. 1 to the jury. The substance of this requested charge was that, in order to convict, the jury must be satisfied beyond a reasonable doubt either that appellant had heroin on his person or, if found on the person of Juanita Davis, that appellant had such heroin under his power of control. The judge in his per curiam shows that he refused this special charge because the elements of it were covered by his general charge to the jury.
An examination of the portion of the general charge given by the judge relative to the scienter necessary to establish possession of a narcotic drug, which is quoted in the judge's per curiam to this bill, amply sustains his ruling.
Bill No. 13, which was taken to the overruling of appellant's motion for a new trial, presents nothing for review as it merely reasserts the alleged errors contained in the other bills already discussed and adjudicated and certain additional grounds not patent on the face of the record, to which no bills of exceptions were reserved. The latter cannot be considered on appeal. R.S. 15:500, 15:502; State v. Forsythe, 243 La. 460, 144 So.2d 536.
The conviction and sentence are affirmed.
NOTES
[1] Bill No. 10 has been abandoned.