257 So.2d 381

**STATE of Louisiana**

**v.**

**Romaine HARPER.**

No. 51143.

Jan. 17, 1972.

Rehearing Denied Feb. 21, 1972.

---

Gravel, Roy & Burnes, Richard V. Burnes, Alexandria, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Edwin O. Ware, III, Dist. Atty., Jules L. Davidson, Jr., Asst. Dist. Atty., for plaintiff-appellee.

McCALEB, Chief Justice.

Romaine Harper was convicted of the crime of attempted simple burglary and sentenced to serve four and one-half years at hard labor in the State Penitentiary. On this appeal he relies on two bills of exceptions to obtain a reversal of the conviction.

During the voir dire examination of Henry Price, a prospective juror, defense counsel asked him, "Mr. Price, would it in any way influence your decision in this case if you were told that the defendant has a criminal record?", at which point the trial

judge interrupted.[1] Nevertheless, the witness answered, "I don't know." The court then expounded on the impropriety of the question, and counsel thereafter reserved a bill of exceptions. After the State accepted the juror, he was peremptorily challenged by the defense.

In Bill of Exceptions No. 1 it is urged that the court erred in its ruling regarding the propriety of the question propounded to Price.

We find no merit in the bill. An accused's prior convictions are not admissible during his trial unless he takes the stand in his own behalf. R.S. 15:495 permits proof of such convictions to impeach his credibility. And when he is impeached the jury is entitled to consider the fact of his conviction in determining his veracity. Consequently, as the trial judge observed, it is not proper to permit defense counsel "To ask a juror to speculate on a probability * * *" and to ask him "what his verdict would be or * * * what would influence his verdict if certain facts did or did not exist."

In State v. Williams, 230 La. 1059, 89 So.2d 898, we specifically held that: "It is not proper for counsel to interrogate prospective jurors concerning their reaction to evidence which might be received at the trial. State v. Henry, 197 La. 999, 3 So.2d

---

1. The bill of exceptions shows that the court said, "No"—and that the rest of what he said was indistinct.

104; State v. Morris, 222 La. 480, 62 So.2d 649; State v. Washington, 225 La. 1021, 74 So.2d 200 and State v. Peltier, 229 La. 745, 86 So.2d 693."

Similarly, in State v. Oliver, 247 La. 729, 174 So.2d 509, where defense counsel inquired of a juror, whether the fact that a prospective defense witness had been convicted of violating the narcotics law would prevent the juror from believing her under oath, we affirmed the trial court's ruling which excluded the question as improper, stating:

"Counsel was without right to commit a prospective juror in advance as to his evaluation of the credibility of a defense witness. The query had no relevancy to the juror's qualification to serve in the trial of the case nor was it calculated to determine whether the juror was biased against appellant. State v. Wideman, 218 La. 859, 51 So.2d 96; State v. Morris, 222 La. 480, 62 So.2d 649; State v. Swails, 226 La. 441, 76 So.2d 523; State v. Williams, 230 La. 1059, 89 So.2d 898 (on rehearing)."

Additionally, the question here propounded was objectionable because it imports to the juror the suggestion that it might be improper for him to permit the prior criminal record of the defendant-witness to influence him in weighing the evidence and in determining the credibility of the witness. Moreover, an intelligent answer to the question would require that the juror be instructed in the law as to what extent the prior conviction should be considered, which instruction properly occurs when and if evidence of conviction is offered. In general, this Court has not approved statements of particular phases of law being expounded to jurors on their voir dire examination as a preface to interrogation. As stated in State v. Schoonover, 252 La. 311, 211 So.2d 273, " * * * this practice tends to facilitate attempts to commit the juror's vote in advance of deliberation. Care should be exercised to prevent this result."

Unquestionably, defense counsel has the right to interrogate prospective jurors, within reasonable limits largely within the discretion of the trial judge, to determine whether they are biased or committed to certain views not only for the purpose of discovering grounds for challenge for cause but also to enable the intelligent exercise of peremptory challenges. But the question propounded did not legitimately serve that end, for it had nothing to do with the juror's general attitude to or against appellant. On the contrary, it sought to discover in advance what the juror's reaction would be to impeaching evidence which may or may not be introduced.

Furthermore, appellant was not prejudiced by the court's ruling for, as has been

heretofore shown, the juror answered the question, despite the trial court's interruption. Following his answer, defense counsel did not then challenge him for cause. Rather, with knowledge of the answer he exercised a peremptory challenge, and the juror did not serve. Besides, since appellant did not testify, there was no evidence of his prior convictions and, accordingly, his credibility as a witness was not at stake.

█ Bill of Exceptions No. 2 was reserved, during the voir dire examination of Lawrence Guillory, when the judge sustained the State's objection to defense counsel's question whether the prospective juror "would be willing to accept his [the accused's] testimony as the truth."

There is no error in the ruling. Answering such a question might amount to an advance commitment by the juror that he would believe the testimony of the appellant—a commitment to which the defense is not entitled.

For the reasons assigned the conviction and sentence are affirmed.

DIXON, Justice (dissenting).

I respectfully dissent.

The questions and answers forming the basis of Bill of Exceptions No. 1 are:

"BY MR. POLK:

"Mr. Price, would it in any way influence your decision in this case of—if you were

told that the defendant had a criminal record?

"BY THE COURT:

"No, (indistinct)

"BY MR. PRICE:

"I don't know.

"BY THE COURT:

"To ask a juror to speculate on a probability, is improper and it's also asking him what his verdict would be or what he—what would influence his verdict is —if certain facts did or did not exist.

"BY MR. POLK:

"I'd like to reserve a bill of exception."

The State admitted on oral argument that the defendant had exhausted his peremptory challenges.

The trial judge was incorrect in concluding that this question was "an attempt to determine in advance" what the juror's verdict would be. That question was not asked, and cannot be fairly deduced from what was said. The question, purely and simply, was whether knowledge that the defendant had a criminal record would influence the juror's decision.

The scope of the examination, under the provisions of Code of Criminal Procedure Article 786, is within the discretion of the court. Voir dire examination "should be confined 'within reasonable limits.'" State v. McIntosh, 141 La. 150, 153, 74 So. 886, 887.

It can hardly be argued that proper voir dire examination should not allow questions bearing directly upon the qualifications of a juror. It is nowhere contended that the right to voir dire does not include the right to ask a prospective juror about his relationship to persons involved in the trial, his citizenship, his bias against the enforcement of some laws, his opinion that the statute is invalid, his willingness to accept the law as given him by the court, his physical infirmities, or the numerous other qualifications which the law has fixed for jurors.

The question presented in State v. Hills, 241 La. 345, 129 So.2d 12 is not reached. There, although the accused exercised only two peremptory challenges, this court upset a conviction when the trial court sustained an objection to a defense question concerning membership in certain organizations. This court held that a wide scope should be given voir dire examinations, not only to provide an opportunity to discover grounds for challenge for cause, but to enable trial counsel to exercise intelligently the constitutional right of challenging prospective jurors peremptorily (Article 1, § 10, Constitution of 1921). This court said .in State v. Hills (241 La. at 395–397, 129 So.2d at 31):

"It is a general view as to voir dire examination that the defendant in a criminal prosecution is entitled to make reasonable and pertinent inquiries of the prospective juror so that he may exercise intelligently and wisely his right of peremptory challenge—since each party has the right to put questions to a juror not only to show that there exists proper grounds for a challenge for cause, but to elicit facts to enable him to decide whether or not he will make a peremptory challenge. For this reason, a wide latitude is allowed counsel in examining jurors on their voir dire, and the scope of inquiry is best governed by a liberal discretion on the part of the Court so that if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision, this may be uncovered. It is by examination into the attitudes and inclinations of jurors before they are sworn to try a case that litigants are enabled to reject those persons, by use of peremptory challenges where necessary, who are deemed to be unlikely to approach a decision in a detached and objective manner. The Constitution itself (La.Const. of 1921, Art. 1, Sec. 10) guarantees to the accused the right to peremptorily challenge jurors 'the number of challenges to be fixed by law;' that number, in the trial of any crime for which the penalty is death or necessarily imprisonment at hard labor, is twelve (R.S. 15:354). The *intelligent* exercise of the right of rejection, by use of those twelve peremptory challenges, is the meat of the privi-

lege, and can be substantially weakened by a restriction of questions—the answers to which might be regarded as informative of a juror's attitude and therefore of vital importance to his defense. In State v. Henry, 196 La. 217, 234, 198 So. 910, 915, this Court quoted with approval from 35 C. J. at pages 387, 405 and 406; ' " * * * parties have a right to question jurors on their examination not only for the purpose of showing grounds for a challenge for cause, but also, *within reasonable limits,* to elicit such facts as will enable them intelligently to exercise their right of peremptory challenge, and * * * it is error for the court to exclude questions which are pertinent for either purpose. * * * The right of peremptory challenge is a substantial right, and its freest exercise should be permitted. * * * " ' (Emphasis supplied)."

State v. Hills was cited with approval in State v. Caldwell, 251 La. 780, 785, 206 So.2d 492, 494, where it was said:

" . . . albeit the scope of the examination is within the discretion of the court, it should not be curtailed to the extent of denying an accused the opportunity of ascertaining whether grounds exist for challenge for cause or depriving his counsel of information to intelligently exercise peremptory challenges. State v. Henry, 196 La. 217, 198 So. 910; State v. Brazile, 229 La. 600, 86 So.2d

208; and State v. Hills, 241 La. 345, 129 So.2d 12."

One of the qualifications of a juror is that he be impartial. C.Cr.P. art. 797. That article grants the right to challenge for cause any juror that is not impartial "whatever the cause of his partiality."

This juror (Price) was asked if the defendant's criminal record would influence his decision. The answer to be expected from such question would be in the affirmative; further, the probative value of the defendant's testimony was almost surely to be adversely affected by his prior convictions. Nevertheless, if the juror on voir dire demonstrated that he could, under no circumstances, believe a defendant who had a criminal record, he would not be impartial, and would be subject to challenge for cause.

As in State v. McIntosh, supra, this examination took place near the beginning of the jury selection process. The ruling of the court, on its own motion and not in response to an objection by the State, was adequate to prohibit further examination of prospective jurors about the influence on them of the defendant's criminal record. This court stated in its syllabus in State v. McIntosh, 141 La. at 150, 74 So. at 886:

"Where, in the examination, on voir dire, of proposed jurors, defendant adopts a line of inquiry obviously intended to be directed to all the jurors, with a

view of ascertaining their opinions upon a question, to arise in the case, which he considers important to his interest, and the inquiry is suppressed by the ruling of the trial judge, defendant is entitled to a review of such ruling, on the appeal, even though he may not have exhausted his peremptory challenges in the impaneling of the jury, since, if the inquiry was competent, the error in the ruling was never cured or rendered harmless, as he must have been compelled to accept all the jurors by whom he was tried, without knowing the views of either of them upon the question about which he sought information."

Consequently, defendant's counsel argues that the court's ruling, which prevented his intelligent estimation of the adverse effects of the defendant's prior criminal record, also made it extremely unwise for him to place his client on the witness stand.

Nor did the fact that the prospective juror gave an answer ("I don't know") to the question about the influence of defendant's criminal record ameliorate the situation. As in State v. Henry, 197 La. 999, 3 So.2d 104, the answer "I don't know" clearly showed that there was doubt whether the prospective juror could be impartial.

The record before us and the per curiam of the trial judge do not suggest that the defendant in this case abused the right of voir dire examination by unduly protract-

ing it, by repetition, or by any other means which might justify curtailment by the court in its wise discretion. The trial judge simply states that, "The question asked had nothing to do with the juror's qualifications." With this conclusion I cannot agree. Impartiality is a qualification. The accused is entitled to inquire whether the juror can be impartial, and to challenge him for cause if he cannot be, "whatever the cause of his partiality." C. Cr.P. art. 797.

For these reasons, the conviction and sentence should be reversed