BRUNOT, J.
 

 The accused was indicted and tried for the crime of murder. The jury returned a qualified verdict, and the court sentenced’ the accused to confinement in the Louisiana State Penitentiary, at hard labor, •for life.- The appeal is from that verdict and sentence.
 

 The record presents four bills of exception.
 

 ■ Bill No. 1 was reserved to the overruling of a motion to quash the indictment. The' motion is based upon alleged irregularities in the selection of the twenty names from which the grand jtíry that returned the indictment was drawn: It is admitted that the general venire box contained the names of 300 persons, the number required by law, when the jury commission selected from said box the grand jury venire, but it is alleged that the names of 23 nonresidents of the parish and of 4 members of the jury commission were then in the venire box, and therefore the venire box contained less than 300 qualified jurors when the .grand jury venire was selected. In support of their contention’that this was a fatal irregularity, counsel for defendant cite • and' rely upon State v. Love, 106 La. 658, 31 So. 289. We do not see the analogy between the cited case and the one before us. The facts are very different. In the cited case the jury commission struck from the jury list and removed from the venire box the slips containing the names of all persons who had served as grand jurors and petit jurors at the preceding criminal term of the court, also the names of those who had died, removed from the parish, or had otherwise become disqualified as jurors, and, without supplementing the list and slips in the box with an equal number of names of other persons competent as jurors, proceeded to draw the jury, that was challenged in that case, from a depleted venire box. In its opinion the court said:
 

 “To permit a jury commission to draw a regular jury for a term of court from less than the number prescribed by law'is virtually to permit the commission itself to prescribe the number, and thus practically to nullify the legal requirement of three hundred names. If a commission may legally draw a petit jury from 220 names in the box, why not with equal propriety draw one from 100 names, or any less number?
 

 “To sanction this would' be to invest the commission with power to
 
 select
 
 the petit jury, and thus do away altogether with the drawing by lot or chance.”
 

 It is not alleged in the motion to quash, nor is it shown, that, at the time the grand jury was selected and the petit jury was drawn, any member of the jury commission had knowledge of the fact that some of the persons whose names were on the jury list and in the general venire box had, since their sele'ction for jury service, removed from the parish. Whether or not the names of four members of the jury commission were on the jury list and on slips in the general ve
 
 *1104
 
 ñire box is of no consequence. The law provides for exemption from jury service of certain residents of a parish, such as ministers of the gospel, lawyers, doctors, officials generally, traveling salesmen under certain circumstances, etc., but in respect to all of these persons the exemption is personal to them and may be waived. The trial judge gave, as, his reason for overruling the motion to quash the indictment, that it did not allege fraud or the commission of* great wrong. The per curiam of the learned judge is in the exact words of article 203 of the Code of Criminal Procedure, which is as follows:
 

 “It shall not be sufficient cause to challenge the venire selected for any session of the court or portion thereof or for service at any time in any parish or district of this
 
 State,
 
 or to set aside the venire, because some of the jurors on the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting the jury, or in the composition, summoning or proceedings of the jury commission, unless some fraud has been practiced or some great wrong committed that would work irreparable injury ; provided, that it shall be good ground to challenge, for cause, any juror who is not qualified by law to act.”
 

 The case of State v. Taylor, 44 La. Ann. 783, 11 So. 132, is, in some respects, not unlike the case we are considering. In that case the jury commission did not strike from the venire list the names of persons who had served as jurors at two preceding jury terms of the court, and supplement them by an equal number of qualified jurors. A motion to quash the venire for that reason was overruled, and, in sustaining that ruling, this court said:
 

 “This summary of omissions contains the evidence of irregularities. There is no evidence .to show that fraud has been practiced or any wrong committed in the drawing or summoning of the jury that ‘would work a great and irreparable injury to the defendant.’ State v. Green, 43 La. Ann. 402, 9 So. 42; State v. Simmons, 43 La. Ann. 991, 10 So. 382; Section 10, Act 44 of 1877; State v. Willie Taylor, 43 La. Ann. 1131, 10 So. 203; State v. McCarthy, 44 La. Ann. 323, 10 So. 673.”
 

 We think the motion to quash the indictment was correctly overruled.
 

 Bill No. 2 was reserved .to the overruling of a motion to quash the petit jury venire. This motion is based upon the same grounds alleged in the motion to quash the indictment. The trial judge’s reason for overruling this motion is because it was not filed timely, as provided by article 202 of the Code of Criminal Procedure. For this and the reasons we have given in our consideration of bill No. 1, the ruling, complained of in this bill, is correct.
 

 In this case the indictment was returned into court before the criminal term at which the trial was had begun. We think article 202, Code Cr. Proe., applies to such a case. Whether or not it can be held to apply to indictments returned during the progress of a •criminal term is a question which we are not now called upon to decide. It seems, however, that article 287, Code Cr. Proc., might be invoked in a case of that kind.
 

 Bill No. 3 was reserved to the overruling of an objection by counsel for defendant to the calling of tales jurors for examination on their voir dire, in an order different from the order in which they were drawn from the tales jury box. Counsel does not question the court’s per curiam to this bill. The judge says:
 

 “The list of 20 tales jurors having been delivered to the Counsel for the State and the accused, it was deemed immaterial by the
 
 *1106
 
 court that some of -the names were not called exactly in the order in which they appeared on the list. To have waited for the appearance'of all of the tales jurors drawn, before continuing the selection of the jury, would have caused much and useless delay.
 

 “N. B. It appears that accused did not exhaust his challenges.”
 

 It is a matter of common knowledge that the tales jury box contains 100 names of persons, some of whom reside in sections of the parish remote from the courthouse. Instanter subpcenaes are served upon such jurors when they are drawn for tales jury service. Unlike the regular venire, of which a public record is kept, no one, except the jury commissioners, have knowledge of the persons who have been selected for tales jury service, and whose names have been placed in the tales jury box. Bor this reason, it frequently happens that some of the persons drawn for tales jury service are out of the jurisdiction of the court when they are drawn and cannot be served, while others are sick and cannot be brought into court. If the contention of counsel for defendant was sound, the court would, under the circumstances mentioned, of necessity cease to function. In our opinion, where the accused is not injured thereby, the trial judge may, in the reasonable exercise of judicial discretion, transpose the order in which both regular and tales jurors may be called for examination upon their voir dire..
 

 BiR No. 4 was reserved to the overruling of an objection to the introduction of evidence of a dying declaration made by the deceased. On the hearing to determine whether the dying declaration was admissible, it was shown that, after the homicide, a preliminary examination of the case was had, at which Wilson Stirling, a brother of the
 
 de-'
 
 ceased, testified to a statement made by the deceased while suffering from the wounds which caused his death. This bill recites that on the trial of the case the witness “testified on direct examination that the deceased had made a statement as to the cause of and means by which he had been cut, after having stated that he was going to die and that' there was no hope for him.” When the witness was tendered for cross-examination, an attempt was made to impeach his testimony. Bor this purpose counsel for the accused asked the witness if he had not testified at the preliminary examination as follows:
 

 “He, Hunter Stirling, told me, says I am feeling alright if my stomach wasn’t worrying me, says I am cut so bad I don’t think I will get over it. I heard the Doctor tell you my intestines cut pretty bad, if thats so I wont live.”
 

 The witness admitted that he had so testified at the preliminary examination. Without pressing the inquiry further, counsel for defendant thereupon objected to evidence of a dying declaration on the ground that a proper foundation for its admissibility had not been laid. The objection is> based upon a ground which directly conflicts with the recital of the bill, quoted supra, which is that the witness who was offered to prove the dying declaration testified that it was made by the deceased after he had “stated that he was going to die and that there was no hope for him.” Counsel for defendant presumably attach too much importance to the fact that, on the preliminary examination, the witness omitted to testify that the deceased was under a sense of impending dissolution when the declaration was ■ m'ade, but did so testify on the trial of the case. It is not alleged or shown that there was any occasion, on the preliminary hearing, for the witness
 
 to
 
 detail the circumstances under which the declaration of the deceased was
 
 *1108
 
 •made, as must, of necessity, be done on the formal trial, as a predicate for ruling upon the admissibility of the declaration. It is not shown whether the preliminary hearing was had for the purpose of perpetuating testimony or upon the application of the accused for the purpose of obtaining his release on bond. The mere amplification, by a witness, of testimony he had given on a previous occasion, is not of itself alone a sufficient reason for questioning the integrity of the witness or the accuracy of his testimony. This is the only question this bill presents. It is shown by the recitals of the bill and by the per curiam of the judge that both before and after the deceased made the declaration he declared he was going to die and expressed no hope of recovery.
 

 Finding no error in any of the rulings complained of, the verdict and sentence are affirmed.