76 So.2d 523

STATE of Louisiana

v.

Roy C. SWAILS.

No. 41793.

Nov. 8, 1954.

Rehearing Denied Dec. 13, 1954.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Edwin L. Blewer, Dist. Atty., Shreveport, for plaintiff-appellee.

Wellborn Jack, John E. Lawhon, James T. Jeter, Jack C. Wimbish, Shreveport, for defendant-appellant.

McCALEB, Justice.

Appellant shot and killed Arlene Johnson Brown, a tenant in his apartment house in Shreveport, and was indicted for her murder. After his plea of present insanity and insanity at the time of the crime, the court appointed a sanity commission, which conducted an examination and reported that, in its opinion, appellant was presently (April 24, 1952) insane and had also been insane at the time of the commission of the offense. Following a hearing on the plea of present insanity, the court committed him to the East Louisiana State Hospital at Jackson. In October of 1952, the Superintendent of the hospital informed the judge that appellant's condition had improved to such an extent that he was able to understand the proceedings and assist in his defense and that, consequently, he should be returned to court for final disposition of the charges against him. After the court failed to act upon the recommendation of the hospital superintendent, his counsel applied here for relief and we instructed the judge to grant a hearing. Accordingly, the judge reopened the matter but, after hearing the evidence, ruled that, although appellant was able to understand the proceedings against him and assist in his defense, he was in a state of remission and, if released, might become a menace to society. It was therefore ordered that appellant be returned to the mental hospital. On appeal to this court, the decision was reversed and the case remanded for further proceedings. See State v. Swails, 223 La. 751, 66 So.2d 796.

Thereafter, appellant, who had generally pleaded not guilty and specially pleaded not

guilty by reason of insanity, was tried, convicted and sentenced to death by electrocution. He is appealing from his conviction, relying on 38 of the 44 bills of exceptions taken by him as grounds for a reversal.

As customary in criminal trials wherein multitudinous bills of exceptions have been reserved, the record shows that many of the bills in this case are directed against a repetition of the same alleged error committed by the court at various stages of the proceeding. For this reason, counsel for appellant have grouped the bills into eight separate arguments. We shall therefore endeavor to follow this grouping as closely as practicable in considering the questions raised in the bills.

 Bills Nos. 1-A, 2-A and 3-A were taken to the denial of appellant's motion for a change of venue. He averred that he could not secure a fair and impartial trial in Caddo Parish owing to the great publicity given to the case by the press, by radio, and by discussion among the people, all of which so redounded to his disadvantage that the general public was firmly convinced of his guilt. In support of this claim, appellant produced eight witnesses and various newspaper accounts of the homicide. Twenty-four witnesses testified for the State.

An examination of the evidence reveals that the judge did not abuse his discretion in denying a change of venue.[1] There was ample evidence to show that appellant could obtain a fair and impartial trial in the Parish. At no time had there been any public demonstration of hostility against him and almost two years had elapsed between the date of the killing and that of the trial. The newspaper coverage was not appreciably different from that ordinarily given to a comparable crime.

 Bill No. 4-A was reserved to the court's refusal to require the entire voir dire examination of prospective jurors to be taken by the reporter at the State's expense, it being the contention of defense counsel that the questioning of jurors on their voir dire was necessary to protect appellant's rights under a renewed motion for a change of venue.

There is no merit in the bill. Under Article 500 of the Code of Criminal Procedure, LSA-R.S. 15:500, appellant was without right to have any evidence taken down at State expense, except that which was necessary as a basis for a bill of exceptions, and could not require the State to provide for the reporting of evidence appertaining to guilt or innocence. The motion for a change of venue, which had to be raised in advance of trial, had al-

1. An application for a change of venue is addressed to the sound discretion of the trial judge. State v. Roberson, 159 La. 562, 105 So. 621; State v. Collier, 161 La. 856, 109 So. 516; State v. Washing-ton, 207 La. 849, 22 So.2d 193; State v. Leming, 217 La. 257, 46 So.2d 262 and State v. Johnson, 226 La. 30, 74 So. 2d 402.

ready been overruled. The voir dire examination of prospective jurors had nothing to do with venue but concerned solely the qualification of the jurors who were being selected for the trial of the case.

 Bills of Exceptions Nos. 5-A, 6-A, 10-A, 11-A, 12-A, 13-A, 14-A, 15-A, 16-A, 43-A and 44-A, pertain to the judge's refusal to permit defense counsel to acquaint the jury with certain sections of the mental health law, particularly LSA–R.S. 28:52, 28:53, 28:54, 28:55, 28:59 and 28:96 which, counsel contended, would authorize the judge to commit appellant to a mental institution if he were found not guilty by reason of insanity at the time of the crime. To inculcate this idea in the mind of the jury, counsel attempted to read the above cited sections to the jurymen on their voir dire but were restrained from doing so when the judge sustained an objection of the district attorney. Later, however, after much argument and repeated efforts by counsel to acquaint the jury with the mental health law, the judge reversed his ruling and permitted them to read the cited sections to the prospective jurors. But now it is contended that the subsequent action of the judge only served to confuse the jury inasmuch as he refused to give certain specially requested charges regarding the mental health law, pertaining to the action that might be taken against appellant should he be found not guilty by reason of insanity.

 We find no substance in any of these bills. It was the function of the jury to determine appellant's guilt or innocence on the basis of evidence applicable to the issues of the case. Appellant's main defense was insanity at the time of the commission of the offense, as to which the judge instructed the jury fully and correctly on the law, concisely distinguishing it from the plea of present insanity, which is an issue to be determined solely by the court.

 The special charges submitted by appellant's counsel were properly refused, for they were not wholly correct and wholly pertinent to the case, as required by Article 390 of the Code of Criminal Procedure, LSA–R.S. 15:390. They were not pertinent because the disposition of appellant following a verdict of not guilty was not an issue in the case and they were not wholly correct because counsel did not include in the requested charges certain cognate provisions of the mental health law, to wit, LSA–R.S. 28:56, 28:98 and 28:171.

 Moreover, it is difficult to see how appellant was injured by the original ruling anent the injection of the mental health law into the proceedings in view of the judge's reversal of his position, during the voir dire examination, which enabled counsel to inform the veniremen that appellant could be detained under that law should he be acquitted, and also to question them at length as to their attitude on the insanity plea. In this connection, it is to be noted that defense counsel must have

been well satisfied with the jury as they did not exhaust all of appellant's peremptory challenges.

■ Bills of Exceptions 7-A and 9-A are addressed to the judge's refusal to allow defense counsel to ask prospective jurors whether they believed in psychiatry.

The ruling is correct. Article 357 of the Code of Criminal Procedure, LSA-R.S. 15:357, states that the purpose of a voir dire examination of a juror is to ascertain his qualification to serve in the trial of the case "and the examination shall be limited to that purpose". The questions propounded by counsel were not calculated to determine whether the jurors were biased against appellant but, rather, to ascertain their attitude toward two expert witnesses who were expected to testify in the case and, hence, such questions were objectionable. State v. Henry, 197 La. 999, 3 So.2d 104 and State v. Wideman, 218 La. 860, 51 So.2d 96.

■ In Bill No. 8-A it is alleged that the district attorney, in questioning a prospective juror, omitted the word "intent" in defining murder. However, since the bill, as drawn, shows neither the question to the juror nor his answer thereto, we are hardly in a position to pass upon the complaint as the district attorney in his brief denies that he omitted the word "intent" in questioning the jurors. Nevertheless, inasmuch as defense counsel had ample opportunity to clarify any omission in the definition and in view of the judge's charge, in which he properly and fully defined the crime, it is difficult to see how appellant suffered any injury.

■ Bill of Exceptions 17-A was reserved when the court overruled the motion of defense counsel that all of the evidence taken on the trial be reported at the expense of the State. The basis for the motion was that the evidence in the case did not solely appertain to appellant's guilt or innocence but was also relevant to the insanity plea and the renewed motion for a change of venue. From this premise, it is argued that Article 500 of the Code of Criminal Procedure, LSA-R.S. 15:500, which, as above stated, does not require a reporting of evidence appertaining to guilt or innocence, is inapplicable.

The contention is not sound. Appellant's plea of insanity at the time of the commission of the crime is one directly pertaining to guilt or innocence, determinable solely by the jury. Article 267, Code of Criminal Procedure, LSA-R.S. 15:267; Article 14, Criminal Code, LSA-R.S. 14:14; State v. Eisenhardt, 185 La. 308, 169 So. 417; State v. Cook, 215 La. 163, 39 So.2d 898 and State v. Basco, 216 La. 365, 43 So.2d 761. And the testimony taken at the trial had nothing to do with the question of a change of venue, which had already been disposed of in limine.

■ Bills of Exceptions 18-A through 29-A,[2] which counsel have grouped under one specification of error, are directed, for the most part, to the judge's refusal to require the State witness, Charles Brown, decedent's former husband who was also shot by appellant, to furnish the address of his present wife, Dorothy Wilson Brown. Defense counsel had issued a subpoena for Mrs. Brown and allegedly intended to prove by her that Brown was carrying a pistol at the time of the affray in which his wife was killed.

We find no merit in the bill. Aside from the fact that there was evidence adduced to show that Brown did not actually know the address of his wife, we know of no authority for the contention of counsel that a court may coerce one witness to furnish the address of another witness. Moreover, if Dorothy Wilson Brown was a material witness for the defense, counsel could have moved for a continuance of the case until she could be served and brought into court, but they did not avail themselves of this remedy.

■ While appellant's wife was on the witness stand, she was questioned on cross-examination with regard to a letter written by appellant before he was indicted, in which he requested that he be allowed to testify before the Grand Jury. Defense counsel objected to this line of examination and, when overruled, reserved Bills of Exceptions Nos. 32-A and 33-A. It is contended by counsel that the interrogation of Mrs. Swails on this score was improper as it conveyed to the jury the idea that, since the Grand Jury indicted appellant notwithstanding his testimony, it believed he was guilty.

These bills are without substance as the purpose of the district attorney in propounding the questions, concerning appellant's letter to the Grand Jury, was to weaken Mrs. Swail's statements on direct examination to the effect that defendant had no memory of the events that occurred on the day of the killing. In his letter to the Grand Jury, appellant stated that he wished to " * * * give my testimony as to the facts from which the incident happened * * * ", thus indicating that he did remember the circumstances of the shooting. Accordingly, it was entirely appropriate, in cross-examining Mrs. Swails, to confront her with the fact that appellant had written such a letter. Furthermore, the Petit Jury could not have been led to misunderstand that the Grand Jury believed appellant guilty, as the judge charged the jury that the indictment of appellant following his appearance before the Grand Jury had no bearing on his guilt or innocence of the crime.

2. Of this group of bills only 18-A was actually perfected and some of them have to do with matters which were not raised in 18-A. As the bills were not perfected and as these matters were not mentioned in argument or in brief, we take it that they have been abandoned.

The final bills pressed on this appeal, Nos. 37-A through 41-A, relate to the alleged error of the judge in permitting Cecil Payne, a city detective, to voice his opinion as to the sanity of appellant at the time the crime was committed. The argument is that, since Payne was merely a lay witness, it was improper to allow him to draw inferences from occurrences during his investigation, as the proper conclusions to be reached from such facts fall within the province of the jury.

The contention is not tenable. It is well settled in this State, and by the overwhelming jurisprudence of this country, that a non-expert witness, basing his testimony on facts and circumstances known to him, may be permitted to give opinion testimony touching upon the sanity or insanity of a person whose mental condition is at issue, provided the witnesses be shown to have had ample opportunity to observe the speech, manner, habits and conduct of such person.[3] See State v. Lyons, 113 La. 959, 37 So. 890; State v. Montgomery, 121 La. 1005, 46 So. 997; State v. Genna, 163 La. 701, 112 So. 665; State v. Madena, 165 La. 474, 115 So. 661; State v. Neu, 180 La. 545, 157 So. 105; 20 Am.Jur. Sections 852, 853, and 32 C.J.S., Evidence, § 507.

In the case at bar, a proper foundation was laid prior to the admission of the opinion of the lay witness. It was shown that Payne had been acquainted with appellant for a number of years and that he was well qualified by his contact, observations of and conversations with him, to express an opinion as to his mental condition as of the date of the commission of the crime.

The conviction and sentence are affirmed.

PONDER, J., absent.

---

3. The reason for this rule is stated in Wharton's Criminal Evidence, 11th Ed., Vol. 2, Sec. 993, page 1744, thus:
 "Such opinions are admitted because it is impossible to convey by language, to those who are not eyewitnesses of the facts, such an understanding of the facts that they can form a correct judgment, and the witness's own observations must convey the indefinable, almost imperceptible, actions which language cannot describe".