McCALEB, Justice.
 

 On June 2, 1953, appellant shot and killed one Albert Bell Goos, a deputy sheriff of Calcasieu Parish. He was indicted for murder, tried, convicted and sentenced to death. On appeal to this court, the judgment was reversed and appellant awarded a new trial. See State v. Sauls, 224 La. 1063, 71 So.2d 568. He was then re-arraigned under the original indictment and, upon his plea of not guilty, his case was fixed for trial on May 17, 1954. Prior thereto, he withdrew his plea, filed motions to quash the indictment and to set aside the fixing of the case and for the appointment of a lunacy commission. Simultaneously, he entered a plea of not guilty by reason of insanity at the time of the commission of the crime.
 

 The motions to quash the indictment and to set aside the fixing of the trial were overruled.
 
 [1]
 
 The motion for a lunacy commission was granted, the court appointing Dr. Harry S. Snatic, the Coroner, and Dr. Barclay Funk, a psychiatrist, as members of the Commission. On May 1, 1954, following a hearing wherein the report of the Commission and the testimony of the doctors was adduced in evidence, the court found appellant to be presently sane. Thereafter, he was tried for his crime, found guilty as charged and sentenced to death. He has appealed, relying on ten bills of exceptions perfected by him below as grounds for a new trial.
 

 Bill of Exceptions No. 1, which is neither argued nor briefed, was taken when the judge refused to allow counsel for appellant to ask -psychiatrist Dr. Barclay Funk, a State witness, whether he was familiar with the work entitled “Principles and Practices of Medicine” originally written by Sir William Osier. An objection of the district attorney to this line of cross-examination was maintained on the ground that the evidence sought to be elicited was irrelevant and immaterial, and the judge states in his per curiam that it was improper to cross-examine Dr. Funk as to medical authorities or textbooks since it would only serve as a test of the qualifications of the witness, which had already been admitted.
 

 The ruling of the judge would appear to be erroneous if the object of the question was to examine the basis of the witness’ qualifications. The cross-examination of an expert witness, by reference to
 
 *701
 
 medical and other scientific authorities is generally sanctioned for the purpose of testing his knowledge, background and accuracy. And, to this end, quotations may be read to the witness from standard treatises, provided that the object is not to get their contents and the opinions of the authors before the jury. See 32 C.J.S., Evidence, § 574, pp. 428-431.
 

 However, the fact that the evidence was excluded in this instance (assuming that the judge erred) does not necessarily entitle appellant to a new trial. On the contrary, it has been many times declared by this court that, in view of Article 557 of the Code of Criminal Procedure, LSA-R.S. 15:557, a new trial will not be granted because of the improper admission or rejection of evidence unless the error is prejudicial to the substantial rights of the accused. State v. Saia, 212 La. 868, 33 So.2d 665 and State v. Grayson, on rehearing, 225 La. 142, 72 So.2d 457. In this case, appellant makes no showing whatever that he was harmed by the ruling of the judge for, as aforesaid, he neither briefed nor argued the point nor does he show in the bill of exceptions reserved by him the purpose for which he sought to interrogate Dr. Funk with respect to the writings of Sir William Osier. If it was his design to bring' before the jury the opinions of the author of the treatise, then the ruling of the judge was correct.
 

 Bills Nos. 2 and 3 relate to the manner in which the report of the lunacy commission was placed in evidence and may be considered together. The record shows that, after the State rested its case, the judge, acting under the authority of LSA-R.S. 15:268, called the members of the lunacy commission to the stand and examined them with respect to their findings as to the sanity of appellant at the time of the commission of the offense. Counsel for appellant objected to this procedure on the part of the court, whereupon the district attorney requested and was permitted, over objection of defense counsel, to reopen the State’s case and place the members of the lunacy commission on the stand as witnesses for the State.
 

 Counsel for appellant contend that this procedure was contrary to law for two reasons, (1) that the judge is without authority to call upon any witness to give testimony because the party placing the witness on the stand vouches for his credibility and (2) that his action in the premises was non-judicial and violative of Section 3 of Article VII of the Constitution.
 

 We find no merit in these points. Article 268 of the Code of Criminal Procedure, LSA-R.S. 15 :268, which prescribes the procedure attendant upon the appointment of a lunacy commission to investigate the sanity of a defendant at the time of the commission of the offense, specifically provides, inter alia, that “The physicians appointed by the court shall be summoned to testify at the trial and
 
 shall be examined by the court
 
 and may be examined by counsel
 
 *703
 
 ■for the state and the defendant.” (Italics •ours.) Thus, the statute makes it incumbent on the judge to examine the physicians and, if the parties do not summon them, perhaps it becomes his duty to do so. However, it is unnecessary in this case to ■determine whether the judge was obliged to summon the doctors because they ultimately appeared as witnesses for the State.
 

 We also find it difficult to follow ■counsel’s other contention which is, specifically, that LSA-R.S. 15:268 is unconstitutional in requiring the judge to question the members of the lunacy commission at the trial because the examination of witnesses is not a- judicial function. It ■seems plain that the statute, in thus providing, designates such examination as being judicial in nature, and we know of no good reason why we should hold otherwise.
 
 [2]
 

 While the judge was examining Dr. Barclay Funk before the jury, in accordance with the provisions of LSA-R.S. 15:268, he propounded six questions relative to the mental condition of appellant, employing the phrase “at the time of the commission of the offense”. Counsel objected to these ■questions on the ground that the court was .assuming that appellant committed the offense and further that they were tantamount to a comment on the facts, in violation of LSA-R.S. 15 :384. When this objection was registered, the court immediately instructed the jury as follows: “Let it be distinctly understood, Gentlemen, tha? I have not indicated or said in any manner and do not intend to tell you in any manner that this defendant committed the offense. I did not say that and do not intend to say it, and I do not want you to deduct from any of my questions that I even think it.” Despite this instruction, counsel reserved Bill of Exceptions No. 4.
 

 The proposition advanced by the bill is untenable. If the questions of the judge are regarded as improper, any injury that might have resulted was obviated by the instruction which we have quoted above.
 

 Counsel for appellant maintains that the most grievous error committed at the trial was in the manner of selecting tales juror Noah J. Portie. It appears from the record that, after the regular panel of petit jurors was exhausted, the court directed the sheriff to draw the names of 100 tales jurors from the tales jury box. These jurors were summoned to appear at 2:00 p. m. but only a little more than one-half of them had been served and reported present at that hour. The selection of the jury proceeded until 5 :00 p. m., at which time the court recessed until 7:30 p. m. At that hour, ten of the tales jurors, who had not appeared at 2:00 p. m., reported being present. Of these, two were excused by
 
 *705
 
 the court for legal reasons and the names of the other eight were written on slips of paper and placed in the jury box. One of these names, that of Noah J. Portie, was drawn from the box. After M.r. Portie had been questioned on voir dire examination by both the State and appellant, the latter complained that he had been illegally drawn as a juror and challenged him peremptorily, notwithstanding that his peremptory challenges had been exhausted. Upon disallowance of the challenge by the court, Bill of Exceptions No. 5 was reserved and, thereafter, counsel moved to dismiss the entire jury panel chosen to try the case. When this motion was overruled, he reserved Bill of Exceptions No. 6.
 

 Counsel for appellant assert that it-was error for the court to allow Mr. Portie to serve as a juror for the reason that his name, together with the names of seven prospective jurors, who appeared at 7:30 p. m., had already been placed in the jury box at the session held at 2:00 p. m. and that, therefore, the names appeared twice in the box.
 

 However, counsel’s version of the facts is denied by the judge, who states in his per curiam that the only irregularity that occurred was that the name of Mr. Portie and the names of the other seven jurors, appearing at 7:30 p. m., were written on a slip of paper by the Clerk rather than by typewriter, as were all of the original tales juror slips. We are bound by the statement of the judge, which is not contradicted by the record.
 

 Moreover, even if Mr. Portie’s name had been inadvertently duplicated in the jury box, this would not constitute grounds for a reversal of the conviction forasmuch as the juror was fully qualified in all respects.
 

 Article 203 of the Code of Criminal Procedure, LSA-R.S. 15:203, provides, among other things, that it shall not be sufficient cause to challenge a venire because of defects or irregularities in the manner of selecting the jury unless fraud has been practiced or some great wrong committed that would work irreparable injury. Appellant was accorded by law the right to be tried by an impartial jury and no more. He was not entitled to select his own jury but was given twelve peremptory challenges which enabled him to that extent, at least, to eliminate those jurymen whom he did not wish to sit in judgment of his case.
 

 Bills Nos. 7 and 9 refer to the overruling of appellant’s objections to the offering in evidence of the reports of the two doctors appointed to the lunacy commission. These objections were founded on the ground that both reports contained information pertaining to the present sanity of appellant. It is argued that their admission was improper because the question of present insanity is a matter to be passed upon by the judge and not the jury.
 

 
 *707
 
 There is no merit in the bills. The court instructed the jury that it was to consider the reports only for the purpose of determining the sanity of appellant at the time the offense was committed. Furthermore, evidence of present sanity was a factor which could be considered by the jury in determining the validity of appellant’s defense of insanity at the time of the commission of the offense.
 

 Bill of Exceptions No. 8 was taken when the court refused to require Dr. Snatic, the Coroner, to define the term “epileptic personality”. Dr. Snatic had testified that he was not a psychiatrist and was unable to define the term. Nonetheless, counsel repeated several times his request for a definition until the court ordered him to desist.
 

 There is no substance in the bill. The trial judge is vested with the spund discretion to deter prolonged, unnecessary or irrelevant examination of a witness. Article 369, Code of Criminal Procedure, LSA-R.S. IS :369.
 

 Bill of Exceptions No. 10 was reserved to the introduction in evidence of appellant’s handwritten confession of the crime over counsel’s objection that the State had not adequately established that it was free and voluntary.
 

 This bill, like Bills Nos. 1 and 8, has been submitted without argument on the part of appellant. However, an examination of the -record discloses that the State produced evidence exhibiting beyond any doubt that the confession was voluntary and met all requirements of the Constitution and laws of this State.
 

 The conviction and sentence are affirmed.
 

 [1]
 

 . They are no longer issues in the case, having been abandoned by appellant.
 

 [2]
 

 . State ex rel. O’Donnell v. Tissot, 40 La.Ann. 598, 4 So. 482, relied on by-counsel, is inapposite. That case had solely to do with restraining'judges from performing functions which were exclusively vested in. the Legislature.