137 So.2d 283

**STATE of Louisiana**

**v.**

**Wilbert RIDEAU.**

No. 45730.

Jan. 15, 1962.

Rehearing Denied Feb. 19, 1962.

James A. Leithead, Fred H. Sievert, Jr., Lake Charles, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., Lake Charles, for appellee.

SANDERS, Justice.

The defendant, Wilbert Rideau, was convicted of murder and was sentenced to death. He has appealed from the conviction relying upon thirty-four bills of exception.

The indictment arose out of the robbery of the Southgate Branch of the Gulf National Bank in Lake Charles on February

16, 1961. In the robbery Julia Ferguson, an employee of the bank, was killed.

The facts surrounding the offense may be stated briefly: At approximately 6:55 p.m. Rideau entered the bank and at pistol point forced three employees, Julia Ferguson, Dora McCain and Jay Hickman, to fill a suitcase with money. He forced them into Julia Ferguson's automobile and directed them at pistol point to an uninhabited area northeast of Lake Charles. He then ordered them out of the car, lined them up three abreast, and fired six shots at them. Jay Hickman ran to his right and fell into a bayou. Dora McCain fell directly in front of Rideau on the west shoulder of the road. Julia Ferguson fell near Dora McCain. When Julia Ferguson attempted to rise to her knees, Rideau stabbed her to death with his hunting knife.

Counsel for the defendant filed a motion to quash the indictment and the general venire list, the general venire box, and the petit jury venire for the reason that the jury commission was not legally constituted and had not been properly designated as a jury commission under the provisions of LSA–R.S. 15:175 et seq. and LSA–R.S. 13:3041–13:3056. The trial judge overruled defendant's motion to quash. To this ruling defendant excepted and reserved Bill of Exception No. 1.

The defendant contends that LSA–R.S. 15:172–15:201 provides for a jury commission for the trial of criminal cases, and LSA–R.S. 13:3041–13:3056 provides for a jury commission for the trial of civil cases; that there is only one jury commission in Calcasieu Parish; and that since the qualifications are different for the civil and criminal commission under the statutes, the jury commission so chosen was not designated as one to act in criminal cases. In essence, defendant contends that it was the intent of the law to have two separate jury commissions, one for civil cases and one for criminal cases. Since there was only one commission, he urges that he was not tried by a legally constituted jury.

▮ The motion to quash was properly overruled for LSA–R.S. 15:203 provides:

"It shall not be sufficient cause to challenge the venire selected for any session of the court or portion thereof or for service at any time in any parish or district of this state, or to set aside the venire, because some of the jurors on the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting the jury, or in the composition, summoning or proceedings of the jury commission, unless some fraud has been practiced or some great wrong committed that would work irreparable injury; provided, that it shall be good ground to challenge, for cause, any juror who is not qualified by law to act."

■ In the absence of an allegation of fraud or a showing that irreparable injury has been committed, the venire cannot be challenged.[1]

Bill of Exception No. 2 was reserved to the refusal of the trial judge to grant a motion of the defendant for a change of venue.

The motion for a change of venue is based on the "sensational" news coverage, radio and television broadcasts, and the fact that the employees of the Gulf National Bank, victims of the crime, are well known citizens of the City of Lake Charles.

■■ In the case of State v. Scott, 237 La. 71, 110 So.2d 530, this Court stated the rule applicable to a change of venue:

"The burden of establishing that an applicant cannot obtain a fair trial in the parish where the crime was committed rests with him. The test is whether there can be secured with reasonable certainty from the citizens of the parish a jury whose members will be able to try the case on the law and evidence, uninfluenced by what they may have heard of the matter and who will give the accused full benefit of any reasonable doubt arising either from the evidence or the lack of it. State v. Rini, 153 La. 57, 95 So. 400 and State v. Faciane, 233 La. 1028, 99 So. 2d 333 and authorities there cited. The power to grant a change of venue rests in the sound discretion of the trial judge, whose ruling will not be disturbed in the absence of a showing of clear abuse thereof."

See also State v. Swails, 226 La. 441, 76 So. 2d 523; State v. Johnson, 226 La. 30, 74 So. 2d 402.

Of the witnesses produced at the hearing of the motion for a change of venue, five testified that in their opinion defendant could not get a fair trial in Calcasieu Parish, and twenty-four testified that in their opinion the defendant could get a fair and impartial trial. A stipulation was made that five other witnesses would testify that defendant could obtain a fair trial in the parish.

■ After reviewing the evidence on the motion for a change of venue, we are of the opinion that the trial judge properly denied this motion.[2]

1. State v. Ferguson, 240 La. 593, 124 So. 2d 558; State v. Jenkins, 236 La. 256, 107 So.2d 632, certiorari denied 359 U.S. 998, 79 S.Ct. 1135, 3 L.Ed.2d 986; State v. Rue, 236 La. 451, 107 So.2d 702; State v. Murphy, 234 La. 909, 102 So.2d 61, certiorari denied 357 U.S. 930, 78 S. Ct. 1376, 2 L.Ed.2d 1373; State v. Smith, 234 La. 19, 99 So.2d 8; State v. Sauls, 226 La. 694, 77 So.2d 8; State v. Stell, 206 La. 770, 20 So.2d 131; State v. Gros, 204 La. 705, 16 So.2d 238; State v. Bussa, 176 La. 87, 145 So. 276; State v. Smothers, 168 La. 1099, 123 So. 781; LSA–R.S. 15:172, 15:203, 15:557.

2. State v. Wilson, 240 La. 1087, 127 So. 2d 158; LSA–R.S. 15:293.

Bill of Exception No. 3 was reserved when the trial judge, after hearing evidence and receiving the written report of the lunacy commission appointed by the court, found the defendant presently sane.

It is contended by defendant that insufficient time was taken by the examining psychiatrists to properly arrive at a diagnosis since each was aware that the defendant had a history of black-out spells or headaches.

When defendant was arraigned on the charge of murder, his counsel entered pleas of not guilty and not guilty by reason of insanity at the time of the commission of the crime.

On March 21, 1961, the court appointed a lunacy commission composed of Drs. Barclay Funk, Ernest C. Miller (both of whom are psychiatrists) and Harry S. Snatic, the parish coroner. According to the evidence Dr. Funk interviewed the defendant on April 1 and April 2, and each interview consumed about two and one-half hours. Dr. Miller saw the defendant on April 1 for about one and one-half hours. Dr. Snatic examined the defendant for approximately one hour. The written report of the lunacy commission states that the defendant is sane, that he understands the proceedings against him, and that he is mentally competent to assist his counsel in the defense of the case. No evidence was offered by defendant to rebut the testimony and the written report of the lunacy commission.

Defendant relies upon the testimony of Dr. Miller to the effect that he was of the opinion that the accused had a mental disease and that he would like to see a brainwave test of the accused. It is the contention of defendant that insufficient time was taken by the psychiatrists to arrive at a diagnosis, and that in view of Dr. Miller's testimony, the accused should have been sent to an appropriate institution for such tests and additional observation.

Although Dr. Miller testified that he would like to see a brainwave test, he nevertheless positively testified that in his opinion the defendant was mentally competent to understand the nature of the proceedings and to assist his counsel in his defense. Dr. Miller testified that the defendant was oriented as to time, place and circumstance; was in contact with reality; and fully understood the natural, probable, and usual consequence of his acts.

We cannot say that the trial judge abused his discretion in finding the defendant presently sane, fully competent to understand the proceedings against him, and able to assist his counsel in his defense. There is no merit to Bill of Exception No. 3.

Bill of Exception No. 4 was taken to the refusal of a motion for a continuance. This motion was based on the allegation that during the later afternoon of April 6, 1961, counsel for defendant was informed that defendant had been examined by doctors

for black-out spells and fits when he was about eleven years old, and counsel desired additional time to investigate this report by contacting certain relatives.

■ The testimony of the members of the lunacy commission took into consideration the history of black-out spells given to them by the defendant. As stated by the trial judge, the facts alleged in the motion for a continuance that relatives "may" exist who "may" have known of such occurrences are not a sufficient reason to set aside the assignment for trial and continue the case. We find that Bill of Exception No. 4 is without merit.

Bill of Exception No. 5 was taken to a denial of a motion to estop the State from seeking the death penalty. This motion was based on the ground "that the State had permitted the Defendant, without the benefit of counsel, to make an unqualified plea of guilty to a capital offense, armed robbery, in which a homicide resulted, contrary to the laws and Constitution of this State; that such fact had been given great publicity in all news media prior to the trial, and the failure to sustain Defendant's Motion deprived Defendant of his rights to due process under the law and prejudiced his chances to receive a fair and impartial trial in this matter."

The record shows that upon first arraignment defendant was charged with three counts in the indictment: murder (count 1), aggravated kidnapping (count 2), and armed robbery (count 3). A plea of not guilty was entered on the first two counts, and defendant entered a plea of guilty to armed robbery. Attorneys were appointed for defendant and later, upon their motion, defendant was allowed to withdraw all pleas in order to file further pleadings. A motion to quash was subsequently filed. The State was ordered to elect, and the State elected to prosecute and try the murder count.

■ The fact that the defendant was allowed to plead guilty to armed robbery without benefit of counsel is of no moment. State v. Lyons, 180 La. 158, 156 So. 207. The court did in fact appoint counsel to defend the accused shortly after arraignment, and the court allowed all pleas entered to be withdrawn. We perceive no violation of the defendant's constitutional rights. State v. Lyons, supra.

■ The defendant contends that the action of the trial judge, in allowing him to plead guilty to a charge of armed robbery where a homicide was committed, is contrary to LSA–R.S. 15:262 which forbids the court to accept an unqualified plea of guilty in a capital case. The fallacy of this argument is that the armed robbery count, as framed, is not a capital offense. LSA–R.S. 14:64. Furthermore, the plea was withdrawn upon motion of counsel for the defendant.

The second portion of this bill is directed at the fact that on the morning of Feburary 17, 1961, the defendant was interviewed by the sheriff, and the entire interview was filmed (with a sound track) and shown to the audience of television station KPLC–TV on three occasions. The showings occurred prior to the arraignment of defendant on the murder charge. In this interview the accused admitted his part in the crime for which he was later indicted. Defendant contends that this was prejudicial to the accused and that either the State should be estopped from seeking the death penalty or the accused should be granted a new trial in a locale other than Calcasieu Parish.

 This second ground is somewhat related to the grounds asserted in the motion for a change of venue. The evidence taken on the change of venue has been previously discussed. It was established that the accused could get a fair trial in the Parish.[3]

Bill of Exception No. 5 is without merit.

Bill of Exception No. 6 was reserved to the refusal of the trial judge to allow a challenge for cause of a prospective juror, Robert L. Holl. The defendant contends that this juror stated on his voir dire examination that he had a fixed opinion. After his examination counsel for defendant challenged this juror for cause, and the court denied the challenge. The defendant was forced to use one of his peremptory challenges.

 In reference to this bill, the trial judge stated in his per curiam:

"* * * In refusing the defendant's challenge for cause this court looked upon the voir dire examination of this prospective juror as a whole. This juror, upon questioning by the court, unqualifiedly testified that even though he had an opinion in this case, he could lay this opinion aside and enter upon the trial, giving the accused the presumption of innocence, and base his decision solely on the evidence adduced during the trial, and apply the law as the Court gave it to him. The defendant is relying upon the answer to one, of the many questions asked, for a basis for his challenge for cause. The qualifications of a person to serve on a jury in any case must be determined from the whole of the voir dire examination, and not from excerpts of answers which standing alone, would disqualify the person from jury service. (State v. Jones, 175 La. 1014, 144 So. 899.) This court carefully considered the voir dire examination of this prospective [juror] and concluded after hearing testimony in answer to questions of the State, defense and the court, that the opinion

---

3. See State v. Wilson, 240 La. 1087, 127 So.2d 158 and authorities therein; State v. Swails, 226 La. 441, 76 So.2d 523.

formed would readily and easily yield to the evidence to be adduced on the trial of the case and that this juror would lay the opinion aside, enter upon the trial, giving the accused a presumption of innocence and render a verdict solely upon the evidence adduced during the trial and apply the law as the court gave it to him."

This ruling was correct.[4]

Bill of Exception No. 7 was reserved to the refusal of the trial judge to accept a challenge for cause of prospective juror, Andrew Paul LeBleu, because he stated on his voir dire examination that he had a fixed opinion and would require evidence from the defendant to change his opinion.

The trial judge stated in his per curiam that the examination of this prospective juror as a whole reflected that the juror could lay this opinion aside and base his decision solely on the evidence adduced.

Bill of Exception No. 7 is without merit.

Bill of Exception No. 8 was reserved to the ruling of the trial judge refusing a challenge for cause of a prospective juror, A. W. Martin, on the ground that he held a deputy sheriff's commission issued by the Sheriff of Calcasieu Parish. The defendant contends that this would prevent him from being a fair and impartial juror. The defendant was required to exercise one of his peremptory challenges.

The interrogation revealed that Martin had no connection with the sheriff's department as a peace officer. He made no arrests and received no pay. The commission had been issued for the sole purpose of permitting him to carry a gun at night in connection with his employment.

The trial judge correctly ruled that this was not a sufficient ground for a challenge for cause.

Bill of Exception No. 9 was reserved to the ruling of the trial court refusing defendant's motion to have all of the evidence adduced in the case, including the examination of prospective jurors, stenographically reported and transcribed.

The defendant's motion was denied on the ground that Act 12 of 1960, LSA–R.S. 15:-332.2 (which provides for the taking of such evidence), was suspended by House Concurrent Resolution No. 93, adopted by the 1960 Regular Session, until 12 o'clock noon on the 20th day after adjournment of the 1962 Regular Session of the Legislature.

The defendant was granted the right to have a record made of all bills of exception reserved by him during the course of the

4. State v. Wilson, 240 La. 1087, 127 So. 2d 158; State v. Brazile, 234 La. 145, 99 So.2d 62; State v. Brazile, 229 La. 600, 86 So.2d 208; State v. McDonald, 224 La. 555, 70 So.2d 123; State v. Futch, 216 La. 857, 44 So.2d 892; State v. Henry, 200 La. 875, 9 So.2d 215.

trial. The court reporter was available throughout the trial to take and transcribe any matter requested by defendant in connection with such bills of exception.

The defendant relies upon the United States Supreme Court decision of Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. In that case it was conceded that the petitioners needed a full stenographic transcript in order to get adequate appellate review in the State of Illinois. A complete bill of exceptions consisted of all proceedings and evidence. The court held that a denial of the stenographic transcript to the indigent petitioners was violative of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. However, the court stated:

> "We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants."

 In this state the appellate jurisdiction of the Supreme Court in criminal cases extends to questions of law alone. Article VII, Section 10, LSA–Constitution of Louisiana. It cannot review the facts.[5]

A stenographic transcript was made of all bills of exception. The record is adequate for appellate review of the questions of law. For these reasons the decision in Griffin v. People of State of Illinois, supra, is not controlling.

We conclude that the bill of exception is without merit.

Bill of Exception No. 10 was taken to the denial of a challenge for cause of prospective juror, James Bert Stout. The defendant then exercised one of his peremptory challenges.

The basis for the challenge is that the prospective juror testified that he had worked with one of the brothers of the deceased during the last eight months, was employed with the brother of deceased at the time of the trial, and had attended school with the deceased when they were children.

 The examination of this prospective juror revealed that no close friendship existed between him and the brother of deceased and that it was only recently known to him that he had attended school with the deceased twenty-five years ago. The prospective juror testified that he could give the defendant the presumption of innocence and would decide the case solely upon the evidence presented at the trial.

---

5. State v. Eubanks, 240 La. 552, 124 So. 2d 543; State v. Vittoria, 224 La. 258, 69 So.2d 36; State v. Baker, 152 La. 257, 92 So. 889; State v. Belas, 134 La. 859, 64 So. 799.

The ruling of the trial judge refusing a challenge for cause is correct. State v. Brazile, 234 La. 145, 99 So.2d 62.

Bill of Exception No. 11 was taken when a prospective juror on his voir dire examination testified that he had a strong fixed opinion on one point. At that time he pointed to the defendant and stated in a loud voice: "It is that he is not insane." Whereupon defendant moved for a mistrial, alluding to the eight jurors who were already seated in the jury box.

The trial judge denied the motion for a mistrial and instructed the jury to disregard the remark. The defendant challenged the prospective juror for cause and the challenge was sustained by the court. Defense counsel excepted to the court's ruling on the motion for a mistrial and reserved Bill No. 11.

▬▬ A similar situation was presented in State v. Brazile, 234 La. 145, 99 So.2d 62, and therein we held that the defendant was not entitled to a mistrial. The law is well settled that the trial for a criminal offense cannot be defeated or nullified by the act of a witness who makes an improper statement for which the prosecution is not responsible. State v. Brazile, supra; State v. Lea, 228 La. 724, 84 So.2d 169 and the cases therein cited. Moreover, if the remark was prejudicial, then the instruc-

tions of the court to disregard· it removed its prejudicial effect. State v. Wilson, 240 La. 1087, 127 So.2d 158. In his per curiam the trial judge correctly states that the opinion expressed by the prospective juror related to present sanity, an issue for the court and not for the jury.

There is no merit to Bill of Exception No. 11.

Bill of Exception No. 12 was taken to the denial of a motion for a mistrial based on the grounds that the prosecution made a statement that the jury could not return a verdict of guilty without capital punishment unless there were mitigating circumstances. The defendant contended that this was an inaccurate statement of the law and prejudicial to him.

The court instructed the prospective jurors who were then seated to disregard the district attorney's interpretation of the law and informed the jury that the law on the subject would be given by the court at the proper time. Defendant contends that the admonition of the judge did not correct this prejudicial error and that the judge did not later charge the jury.

▬▬ The general rule is that instructions by the court at the proper time removed the prejudicial effect of an improper statement made by a prosecuting officer during the course of the trial.[5] Further-

5. State v. Brazile, 234 La. 145, 99 So.2d 62; State v. Brown, 166 La. 43, 116 So. 588.

more, the trial judge not only specifically instructed the jury to disregard the remark, but in his charge he fully informed the jury of the responsive charges and the law in regard to a finding of guilty without capital punishment. Therefore, the bill is without merit.

Bill of Exception No. 13 was taken to the refusal to sustain a challenge for cause of a prospective juror, Joe Bob Cranford. Defendant assigns as a ground that Cranford was a third cousin of the deceased; that he knew a second cousin of the deceased; that his grandfather was killed by gunshot; that the prospective juror knew the district attorney because of purchase of campaign literature by the district attorney from the printing shop of the prospective juror's father.

The examination of this juror revealed that he was related to the deceased but had only discovered this since her death; that he had never known the deceased; that he knew a second cousin of the deceased, but not intimately; that his grandfather was killed by gunshot before the juror's birth; that he knew the district attorney whom he met during the campaign when the district attorney had printing done at the printing shop where he worked. Upon interrogation this juror testified that these facts would not in any way interfere with his decision and that he would decide the case solely upon the evidence presented.

Under the provisions of LSA–R.S. 15:- 172 the district judge has the discretion to determine the competency of jurors when because of relationship or other causes they may be incompetent to sit upon the trial of a particular case. We held in State v. Scarborough, 152 La. 669, 94 So. 204 that the judge did not err or abuse his discretion in holding that a juror who was distantly related both by blood and marriage to the deceased was qualified since the juror stated that this relationship would not affect his verdict. See also State v. Carter, 167 La. 1080, 120 So. 864; State v. Dunn, 161 La. 532, 109 So. 56; State v. Carricut, 157 La. 140, 102 So. 98; State v. Holbrook, 153 La. 1025, 97 So. 27.

■■■ We do not find that the judge abused his discretion in this instance.

Bill of Exception No. 14 was reserved when the court overruled a motion for a mistrial based upon a statement of a prospective juror that he had a fixed opinion and that he could not try the case solely on the evidence adduced at the trial for the reason that he had seen the defendant on television confessing in the presence of the sheriff.

This remark was made in the presence of eleven jurors. The trial judge instructed the seated jurors to disregard the remark in their deliberations of the case, and the court allowed a challenge for cause.

The reasons assigned for refusing Bill of Exception No. 11 and the authorities there cited are controlling here.

Bills of Exception Nos. 15 and 16 were reserved when the court overruled a defense motion to challenge two prospective jurors, J. M. Corbello and Fred Marshall, for cause on the ground that they held deputy sheriff's commissions issued by the Sheriff of Calcasieu Parish. The defendant contended that this would prevent them from being fair and impartial jurors.

These jurors testified that they had no connection with the sheriff's department, made no arrests, received no pay; and the commissions were used by them for convenience only. They stated that these commissions would in no way affect their decision in this case. The court correctly concluded that these jurors were qualified to serve. We find no merit in these bills.

Bill of Exception No. 17 was taken to the court's refusal to sustain a challenge for cause of a prospective juror, M. J. Dugan, who was alleged to be a close friend of a brother of a material witness for the State and who was acquainted with the material witness.

The trial judge stated in his per curiam:

"The defendant attempted to challenge for cause M. J. Dugan, whose voir dire examination revealed that he was Vice-President of the Calcasieu-Marine National Bank in Lake Charles, that he knew Mr. Jay Hickman, a witness who would testify in this case and that he had previously worked with Mr. Hickman in the Calcasieu-Marine National Bank. He also stated that he was a close friend of Mr. Hickman's brother. Defendants have lifted from the context of the voir dire examination the answers to two questions.

"Mr. Dugan's voir dire examination as a whole and particularly the answers to questions propounded by the court clearly showed that he was qualified to serve as a juror in this case. He stated, upon question by the court, that his relationship with Mr. Hickman, a witness in this case, would not affect his decision in this matter in any way. He further stated that even though he had an opinion in this case, that opinion would readily and easily yield to the evidence that may be adduced upon the trial of this case and that he would lay that opinion aside and enter into the trial of this case, that he would give the accused the presumption of innocence, and that his decision would be based solely and only upon the evidence adduced in the trial of this case and law as would be given to him by the court. Mr. Dugan, as an officer of the Calcasieu-Marine National Bank, which bank was not in-

volved in this matter, through his voir dire examination as a whole, unquestionably convinced this court that he was a qualified and competent juror to serve in this matter.

"The Supreme Court of this State has stated on many occasions that the qualifications of a person to serve on a jury in any case must be determined from the whole of the voir dire examination and not from excerpts of answers which, standing alone, would disqualify the person for jury service."

■■ In our opinion, the per curiam properly disposes of the question here presented.

In the case of State v. Atwood, 210 La. 537, 27 So.2d 324, a bill was taken to the overruling by the district judge of the challenge for cause of a prospective juror, who was challenged because of his acquaintance with the deceased and his family and for probable partiality.

■■ On the examination of this prospective juror in the Atwood case, it was disclosed that he was acquainted with both the deceased and the defendant; that he was acquainted with certain members of the deceased's family; that he had heard the case discussed but had not formed any opinion as to the guilt or innocence of the accused; that he was not biased or prejudiced; and the fact that he was acquainted

with these parties would not influence him in his verdict. This Court held that a reading of this prospective juror's entire examination revealed that the relations between him and the deceased were not such that it would be reasonably believed they would influence the juror in reaching a verdict. For these reasons the court held there was no merit to the challenge for cause.

Bill of Exception No. 18 was reserved when the court overruled a motion for a mistrial based upon the prefatory statement of a prospective juror, in the presence of other jurors: "Well considering the crime he committed * * *" The defendant challenged for cause, and the court sustained the challenge. The court instructed the seated jurors to disregard the remark in their deliberations.

■■ This bill is without merit for the reasons assigned in disposing of Bills of Exception Nos. 11 and 14. See State v. Brazile, 234 La. 145, 99 So.2d 62 and the cases cited therein.

Bill of Exception No. 19 was taken to the overruling of a motion for a mistrial. During the selection of an alternate juror, a prospective juror answered during his examination, in the presence of the twelve jurors selected, that he had seen the television broadcast and had formed an opinion that the accused was guilty, he having confessed.

After the court instructed the jury to disregard the statement made and dismiss it from their minds, the motion for a mistrial was denied.

The authorities cited in disposing of Bills Nos. 11, 14 and 18 are controlling. This bill is without merit.

Bill of Exception No. 20 was taken to the refusal to allow a challenge for cause of an alternate juror on the ground that the juror stated that he had known Hickman, a material witness for the State, for fifteen years; and that the prospective juror held a special deputy commission from the sheriff's department of Calcasieu Parish about ten years ago.

As the trial judge correctly pointed out in his per curiam, this prospective alternate juror did not participate in the verdict rendered in the case, and no prejudice could have resulted. Furthermore, the voir dire examination as a whole clearly reflected that he was qualified and competent to serve as a juror in this case.

 This bill is without merit.

Bill of Exception No. 21 was taken when the trial judge refused defense counsel's challenge for cause of three jurors (Leo Castete, L. S. Halsey and Marvin Corbello) on the grounds that during their voir dire examination they testified that they had seen the television interview between the defendant and the sheriff. Defendant contends that under these circumstances the jurors could not be fair and impartial and were otherwise unqualified. This challenge for cause was made after the jury had been sworn, before the first witness was called by the State, and after the peremptory challenges had been exhausted.

The trial judge ruled that seeing the interview on television was not sufficient of itself to disqualify these jurors, and the challenge for cause was denied because the jurors testified on their voir dire examination that they could lay aside any opinion, give the defendant the presumption of innocence as provided by law, base their decision solely upon the evidence, and apply the law as given by the court. As the judge stated in his per curiam: "They testified they could do so notwithstanding anything they may have heard, seen or read of the case."

 We find no error in this ruling.

LSA–R.S. 15:351 provides:

"The special causes for which a juror may be challenged are:

"(1) That he is not impartial, the cause of his bias being immaterial; but an opinion as to guilt or innocence of the accused, which is not fixed, or has not been deliberately formed, or that would yield to evidence, or that could be changed, does not disqualify the juror;

"(2) That the relations, whether by blood, marriage, employment, friendship or enmity, between the juror and the accused, or between the juror and the person injured, are such that it must be reasonably believed that they would influence the juror in coming to a verdict;

"(3) That the juror served on the grand jury which found the indictment, or on a petit jury which once tried the defendant for the same offense, or on the coroner's jury that investigated the homicide charged against the accused."

In State v. Brazile, 229 La. 600, 86 So.2d 208, we cited with approval the following statement of law from State v. Henry, 200 La. 875, 9 So.2d 215:

" 'It is specifically declared in the Code of Criminal Procedure that a partial juror may be challenged for cause "but an opinion as to guilt or innocence of the accused, which is not fixed, or has not been deliberately formed, or that would yield to evidence, or that could be changed, does not disqualify the juror." Article 351. It is only where a prospective juror's opinion as to the guilt or innocence of the accused is so fixed that it would influence his verdict that he may be considered disqualified because of such opinion and challenged for cause. * * * Even though he has formed an opinion as to

the guilt or innocence of the accused from discussions participated in or from reading about the same in the newspapers, the prospective juror is competent if, having no prejudice against the accused, he can lay aside that opinion. Particularly is this so where he states under oath that he is able to and will try the case only on the evidence adduced during the course thereof. * * * Furthermore, a *prospective juror's competence or incompetence cannot be limited to isolated answers given during the course of his examination. It must be judged from his entire examination.* * * * ' "

In State v. Davis, 237 La. 577, 111 So.2d 778, we said:

"We know of no rule of law which disqualifies a prospective juror merely because he read newspaper articles relating to a defendant. The test is whether or not the prospective juror would be influenced by the statements contained in these newspaper articles. All five of these challenged jurors positively stated that they would disregard these newspaper articles, they had no fixed opinion in the case, and would be guided entirely by the evidence adduced at the trial."

To the same effect is State v. Wilson, 240 La. 1087, 127 So.2d 158.

Bills of Exception Nos. 22, 23, 24, 25 and 28 deal with the same subject matter: the admission in evidence of oral statements and confessions. The basis of these bills is that the admissions and confessions were not freely and voluntarily given as required by law and hence are not admissible as evidence.

In these bills it is recited that while the defendant was being returned by automobile to Lake Charles after apprehension, he made certain oral admissions without first being advised that he was entitled to counsel and that anything he might say could or would be used as evidence against him. Defendant contends that at this time he was handcuffed; that upon his arrival at the jail there was a large crowd of persons outside; that upon being interrogated the same evening in the jail by the sheriff he was not advised that he was entitled to counsel before making the confession; that five days later when he made a confession to the FBI agents he was interrogated for four hours continuously in a room measuring approximately 7 feet by 10 feet.

In brief in this Court it is admitted by defendant that no physical force or duress was used in obtaining these admissions and confessions, but it is contended that he was not advised of his right to have counsel and that what he said would be used against him.

Sheriff Reid testified that when the formal confession of February 16, 1961, was read to defendant he was advised that he did not have to make a statement and any statement so made could be used in court against him. At no time was he advised that he was entitled to have counsel nor asked if he wanted counsel. Deputy Barrios, the two FBI agents, the sheriff's secretary, and all parties present testified that no force or violence was used in obtaining the confessions.

This Court said in State v. Sheffield, 232 La. 53, 93 So.2d 691:

"The objection to the admissibility of the confession on the ground that the statement itself does not show that all of the rights of the accused party were made known to him at the commencement of the taking of the statement, or that the accused was informed that at the time of giving the statement he was entitled to have a lawyer of his own choosing present, or that the court would be required to appoint a lawyer to assist him in the defense of his case is without merit.

"An examination of the written confession shows that the accused party was fully informed of all of his rights. Further, the evidence taken on the hearing to determine whether or not the confession was admissible abundantly shows that the accused was informed by the district attorney that his statement would be used against him, both at the

grand jury investigation of the matter and in court at the trial of the case if he was indicted, notwithstanding that the accused is not entitled to be informed that a voluntary confession might or will be used against him. State v. McGuire, 146 La. 49, 83 So. 374; State v. Burks, 196 La. 374, 199 So. 220; State v. Byrd, 214 La. 713, 38 So.2d 395; State v. Alleman, 218 La. 821, 51 So.2d 83."

The fact that the defendant was handcuffed at the time he made certain admissions does not render the confession inadmissible. See State v. Joseph, 217 La. 175, 46 So.2d 118.

The court correctly ruled that these bills are without merit.

Bills of Exception Nos. 26, 27 and 29 were reserved in connection with an alleged inculpatory admission of the accused on the day following the alleged crime relative to the hunting knife and its introduction into evidence. They raise two contentions: (1) That the statements of the defendant, "That's the knife," and later, "It's one just like that," were not admissible in evidence because the defendant was not warned in advance that any statements could be used against him, and (2) That the knife was not sufficiently identified to be received in evidence.

The trial judge concluded from the evidence that the State had "clearly" shown that these statements were free and voluntary. We find no error in the ruling.

As to the admissibility of the knife in evidence, the court correctly stated:

"There was enough circumstantial evidence before the jury concerning the knife to allow the knife to be introduced into evidence. It was the duty of the jury to determine from the evidence as to whether the knife in evidence was the knife used in the alleged crime."

These bills are without merit.

Bill of Exception No. 30 was taken to the refusal of the request of defense counsel to have the courtroom photographed. Defense counsel stated that the purpose of this request was to show that the crowded condition of the courtroom created an intimidating atmosphere to the accused, the witnesses, and the jury.

This request was properly denied. The record discloses that there were no outcries, applause, or laughter during the trial. At no time were spectators allowed in the immediate vicinity of the jury box. Despite the crowded condition of the courtroom, the trial was conducted in an orderly, dignified atmosphere.

This bill is without merit.

Bill of Exception No. 31 was taken to the refusal of the court to give a charge to the jury concerning the commitment of a person

to a state mental institution when found not guilty by reason of insanity.

The trial judge correctly refused to give the requested charge since commitment to a mental institution is not a subject within the province of the jury. The jury was properly instructed that it could bring in a verdict of not guilty by reason of insanity. The question of commitment to a state mental institution is within the province of the judge. LSA–R.S. 15:270 provides that when any person charged with an offense for which the penalty is or may be capital punishment is found not guilty by reason of insanity, the judge shall commit such person to the state mental institution.

Defendant argues that since the determination of sanity at the time of the crime is solely within the province of the jury, and since, in effect, the jury imposes sentence in a capital case, it was incumbent upon the court to instruct the jury on all of the law applicable to sentence or disposition of the accused. Defendant contends that if the jury had known that a verdict of not guilty by reason of insanity would result in the defendant being committed to a mental institution until such time as the court determined that he was mentally competent to be discharged, the jury might have returned such a verdict.

In considering a similar contention in State v. Swails, 226 La. 441, 76 So.2d 523, we said:

"The special charges submitted by appellant's counsel were properly refused, for they were not wholly correct and wholly pertinent to the case, as required by Article 390 of the Code of Criminal Procedure, LSA–R.S. 15:390. They were not pertinent because the disposition of appellant following a verdict of not guilty was not an issue in the case and they were not wholly correct because counsel did not include in the requested charges certain cognate provisions of the mental health law, to wit, LSA–R.S. 28:56, 28:98 and 28:171."

 Bill of Exception No. 31 is without merit.

Bill of Exception No. 32 was reserved in connection with the court's refusal to give certain requested charges.

An examination of these charges show that they deal with the matter of the accused's sanity at the time of the crime; the law in regard to the jury returning a qualified verdict; and the law on a juror's duty.

 We find from a reading of the charge given by the trial judge that all of the above matters were adequately and sufficiently covered except the charge regarding the commitment to an institution which has been ruled upon in the preceding bill of exception.

Bill of Exception No. 33 was taken to the refusal of the judge to grant a new trial.

In this motion the same objections raised in the various bills of exception are reurged. For the reasons heretofore given, this bill is without merit.

Bill of Exception No. 34 was taken to the denial of a motion in arrest of judgment. The motion is likewise a reiteration of the matters complained of in the various bills of exception. Finding no defect patent upon the face of the record, we approve the ruling of the trial judge denying the motion.

Bill of Exception No. 34 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.

137 So.2d 298